GEORGE M. COOMBS *vs.* CLARENCE E. BEEDE.

Androscoggin.     Opinion May 7, 1896.

*Architect.   Agent.   Compensation.*

An architect is not a contractor who enters into an agreement to construct a house for its owner, but is his agent to assist him in building one.

The responsibility resting on an architect is essentially the same as that which rests upon the lawyer to his client, or upon the physician to his patient, or which rests upon any one to another where such person pretends to possess some skill and ability in some special employment, and offers his services to the public on account of his fitness to act in the line of business for which he may be employed.

The undertaking of an architect implies that he possesses skill and ability, including taste, sufficient to enable him to perform the required services at least ordinarily and reasonably well; and that he will exercise and apply in the given case his skill and ability, his judgment and taste, reasonably and without neglect. But the undertaking does not imply or warrant a satisfactory result. It will be enough that any failure shall not be by the fault of the architect. There is no implied promise that miscalculations may not occur. An error of judgment is not necessarily evidence of a want of skill or care, for mistakes and miscalculations are incident to all the business of life.

The plaintiff, a professional architect, was employed by the defendant to prepare plans and specifications for a house. In an action to recover compensation for services so rendered, the defendant, not relying on any charge against the plaintiff of fraud or negligence, set up at the trial that the services were not beneficial to him for the reason that they were performed in a manner contrary to his express direction and wishes. Upon this contention by the defendant the court instructed the jury that if the architect was explicitly told by the defendant, in addition to other things, that the building he was designing must not exceed a certain named cost, the architect should have made plans accordingly or stated that he could not do it and thereupon declined to do it; and that if he undertook to make plans with the restriction as to the cost of the building, he must do it before he could recover any pay. *Held;* that the instruction was erroneous. It punishes the plaintiff for what might be merely an honest mistake, or miscalculation. It leaves out the elements of care and good faith. It does not require that the plaintiff bound himself to the agreement set up by the defendant. The ruling implies a guaranty or warranty, when none was testified to or really pretended.

ON MOTION AND EXCEPTIONS BY PLAINTIFF.

The case is stated in the opinion.

*Geo. C. Wing*, for plaintiff.

*F. L. Noble and R. W. Crockett*, for defendant.

SITTING: PETERS, C. J., WALTON, FOSTER, HASKELL, WISWELL, STROUT, JJ.

PETERS, C. J.   It is not questioned that the plaintiff, a professional architect, was employed by the defendant to prepare plans and specifications for a house which the defendant intended to have built for himself in the city of Lewiston.   On the trial of this action, brought by the plaintiff to recover compensation for services rendered by him in such employment, the defendant sought to establish that, although certain services were rendered by the plaintiff, such services were not beneficial to him for the reason that they were performed in a manner contrary to his express direction and wishes.

In an examination of the merits of the controversy between these parties, we must bear in mind that the plaintiff was not a contractor who had entered into an agreement to construct a house for the defendant, but was merely an agent of the defendant to assist him in building one.   The responsibility resting on an architect is essentially the same as that which rests upon the lawyer to his client, or upon the physician to his patient, or which rests upon any one to another where such person pretends to possess some skill and ability in some special employment, and offers his services to the public on account of his fitness to act in the line of business for which he may be employed.   The undertaking of an architect implies that he possesses skill and ability, including taste, sufficient to enable him to perform the required services at least ordinarily and reasonably well ; and that he will exercise and apply in the given case his skill and ability, his judgment and taste, reasonably and without neglect.   But the undertaking does not imply or warrant a satisfactory result.   It will be enough that any failure shall not be by the fault of the architect.   There is no implied promise that miscalculations may not occur.   An error of

judgment is not necessarily evidence of a want of skill or care, for mistakes and miscalculations are incident to all the business of life.

In a case at nisi prius in one of our counties, where a controversy arose very similar to the present, the defendant there contending that the plans called for a too expensive house, and that there had been a departure from the instructions given by the employer, HASKELL, J., gave a ruling, which we adopt as an acceptable statement of the law here, as follows : "The plaintiffs continued in the execution of the plans ; they procured the details and perfected the entire set of plans. For some reason those plans were rejected by the defendants. The plaintiffs say that it was because they did not give the house sufficient size and capacity and arrangement to suit them, and that they preferred an entirely different house, a house of different dimensions and different architectural proportions. The defendants say it was because they found the plans impracticable, and that the arrangement of the plans called for so great an outlay that it rendered it too expensive for them to be carried out and adopted, and they say that that was on account of the mistake of the plaintiffs in not properly advising them and in deceiving them as to the practicability of the plans.

"Now, gentlemen, in determining the rights of the parties, it is well to consider what the legal duty of the plaintiffs was to the defendants. The architect is skilled in the art of building houses. Those who employ him have a right to his best judgment, to his skill, to his advice, to consultations with him, and to his absolute fidelity and good faith, and when the architect has contributed these things to the person who employs him, his duty has been fulfilled."

In the case at bar the defendant, not relying on any charge against the plaintiff of fraud or negligence, set up at the trial that there was a special promise that the plans should not call for a house to cost exceeding $2500.00, and contended that, inasmuch as the plans called for a more expensive house than that sum would build, nothing was recoverable for plaintiff's services. And in relation to such contention the presiding justice gave the following

instruction: "Well, if that is true, if Mr. Coombs was explicitly told, in addition to the other things, that the building he was designing must not cost over $2500, that he was to make plans and specifications for a building to cost not over that, why, then, Mr. Coombs, the plaintiff, should have either made plans accordingly, or frankly told Mr. Beede that he could not do it, and declined to do it. If he undertook to make plans with that restriction made to him specifically, why then he must do it before he can recover any pay."

We think this instruction was misleading and without evidence upon which it could be reasonably based. It punishes the plaintiff for what might be merely an honest mistake or miscalculation. It leaves wholly out of consideration the elements of care and good faith. It does not even require that the plaintiff bound himself to the agreement set up by the defendant. The ruling implies a guaranty or warranty, when none was testified to or really pretended.

Of course, it would be too much to say that parties could not make such a shadowy contract as the defense contends for, but it would be so strange and unusual a thing to do, that clear and convincing evidence should be required to prove it. And the testimony exhibits none such to our minds.

Skipping the testimony of the defendant as less adroit and less spirited than that of his wife, who was much the more active of the two in the transaction, we incorporate her statement here, as follows:

"Q. Won't you state to the jury the conversation and what took place?

A. They had some talk about the fifteen-hundred dollar cottage that they had been talking about previously, and conversation was general with regard to the fifteen-hundred dollar cottage; and something was said—I think I spoke myself first—about putting on the other story; spoke about its being better economy. Mr. Coombs said 'Yes, if we studied economy, it certainly was economy to build a double tenement,' and Mr. Beede asked him what it would cost extra to put on the other story and make a double tene-

ment. He said he thought one thousand dollars. Then Mr.
Beede said, 'Well, perhaps you can tell Mr. Coombs something
about what kind of a house you want.' I said: 'I don't know what
we could have for that money so well as he does, he understands
that better than I; but one thing Mr. Coombs, I don't want it to
exceed the twenty-five hundred dollars, and I would rather you
would cut it down to twenty-two; don't you think you could?' He
figured a moment and said he hardly thought we could including
the plumbing, but for twenty-five hundred dollars we could build a
house complete. Mr. Beede said if he could make plans for a
house to be built, not exceeding twenty-five hundred dollars, he
might go ahead, and Mr. Coombs said he would do so, and he
would send me up a sketch of the ground floor to show me what I
could have for size.

Q.  Did he do so?

A.  He did. He told me I might change over whatever I
pleased. Something about the sink, I believe, I wanted differ-
ently. I told him that the arrangement of the rooms was all right,
I guessed.

Q.  Now to come to the next conversation you had with him?

A.  Then after I carried that sketch down, he sent me up a
little sketch of what the elevation would be and I looked that over,
and I thought it was rather more elaborate than what I expected
for twenty-five hundred dollars and talked with some of my friends
about it, and they seemed to think the same; the piazza, I spoke
of that, and they said they should judge that piazza would cost
two hundred and fifty dollars. I went down and talked with Mr.
Coombs, told him that I felt that it was a little extravagant. He
said he guessed not; but I thought he felt as though it would per-
haps overrun twenty-five hundred dollars, and asked him: 'What
do you think such a house ought to cost?' and he said: 'Well,
possibly three thousand dollars.' I said: 'We can't do that;
we want a twenty-five hundred dollar house and we must cut this
down,' and he said: 'You don't want to spoil your house for a
few hundred dollars.' I said: 'We are willing to have it a little
plainer rather than put in more money.' He said: 'Well, just

as you say, I will cut that piazza down, make less posts, take off the fancy work around the rail, and so forth, and cut it down,' and he did so on the final sketches."

By this statement it does not appear that the plaintiff was to prepare plans for any particular kind of house to cost $2,500, excepting that it was to be a two-tenement house with one tenement over the other. Could not the plaintiff have planned a house answering this description which would not have cost that sum or even half that sum, if allowed to do so? But the difficulty was that the defendant's wife not only wanted the expenditure not to exceed $2,500, but she wanted at the same time a house worth much more than that sum, and the architect was trying in good faith to accomplish the desired result as best he could. After the plaintiff had engaged to make the plans, and not before, the defendant calls on his wife, according to her testimony, to inform the plaintiff what kind of a house she wanted. Was it expected that he had promised to secure to her a house to her liking for $2,500 irrespective of actual cost or worth, and that he was agreeing to expend his services gratuitously if he did not succeed in doing so? We see nothing even in the defendant's side of the case justifying such a position. The plaintiff certainly could have reduced the cost upon the plans, and have earned his compensation, if the wife had permitted him to do so.

The plaintiff gives a different version of the transaction, denying that any particular limit was fixed within which he was required to bring the cost of the house, other than that the wife desired to get as much of a house as she could for as small a price as possible, and he did all he could to assist her in her ideas. We have no doubt ourselves that there were talks about $2,500 as a proximate but not conclusive price, and that there were no rigorous or unalterable instructions or conditions about it. The plaintiff says that after the plans were first completed the wife required expensive alterations to be made in them, and while she does not deny the fact she is not willing to admit that she remembers it.

The bids which came in after the plans were advertised were disappointing, there being but four in all and ranging in amount

from $3,300 to $4,400, showing the moral impossibility of an architect being able to fix precisely the cost of any building if the cost is to be measured in any such capricious way as by the bids of contractors.   It was at an unfavorable time of the year when the contractors had on hand all the work they could do, and still the plaintiff by his perseverance virtually obtained afterwards a bid for $3,100 which the defendant refused to accept, nor would he or his wife consent to cut down the plans so as to obtain a bid within the price desired.   And so the plaintiff advised the wife to postpone the matter until spring when the conditions would be more favorable and she frankly accepted the advice.

There was, however, no waiting till spring before the defendant had his house built.   He says he was informed by several persons that he would not be obliged to pay for the plans unless he used them, and he concluded to buy his materials and hire the labor by the day.   His wife had become sufficiently posted, by her experience with the plaintiff, and remembrance of his work, to enable her to make sketches of what she wanted, and so she, with the assistance of the carpenter in her service, acted as architect herself.   And the defendant during the same fall and winter erected a house and stable on their lot at a cost of over $3500.00. The wife says that the house built by her "was brought to the same degree of completion that a house would have been by his (plaintiff's) specifications for a little less than $2700.00." So that plaintiff's calculations, tested by actual cost instead of by contractors' bids, were less than two hundred dollars of variance from the standard which the defendant and his wife pretend was prescribed for him by them.

We can perceive no ground upon which, as the testimony stands, the verdict could have been rightfully rendered.   Even if the defendant's version of the facts be true, then the undertaking of the plaintiff was to make plans for a house to cost $2500.00, and no more, and if, acting in good faith, he exercised his skill and ability in an endeavor to bring about that result, that is all that could be expected or required of him ; and no defense is established against his claim even if he failed in his attempt.   But if

the house designed by him could be built for less than $2700.00, it could hardly be called a failure, especially in view of the interferences on the part of the defendant's wife; nor a failure if the plaintiff could have so altered his plans as to reduce the house in price, and it seems to us preposterous to say that he could not, and he was willing to make alterations and the defendant or his wife would not consent thereto.

*Motion sustained.*