### JOHN S. BANGS

*vs.*

### LEWISTON AND AUBURN HORSE RAILROAD COMPANY.

Androscoggin.    Opinion May 7, 1896.

*Exceptions.    Practice.    Street Railroad.    Track.    Repair.    Way.*

Exceptions do not lie to remarks of the presiding justice in his charge to the jury which embrace an abstract proposition merely that, if possibly in any aspect might become material, is rendered entirely immaterial by subsequent instructions.

In an action against a street railroad to recover damages for an injury sustained by the plaintiff by being thrown from his sleigh when crossing its track, the declaration charged as an act of negligence on the part of the railroad that its inner and outer rail, where it curved around the corner of two intersecting streets, was raised above the level of the streets from two to three inches, rendering that part of the streets dangerous and unsafe for public travel. The defendant contended that if it put its rails upon the grade in the first place that it was not liable; and that any fault in the difference between the elevation of the rails and the street was the fault of the city. Upon this contention the presiding justice instructed the jury that the railroad company, under the evidence in the case, was not bound to keep the street in repair, or between the rails, as that duty was left with the city; and he further instructed the jury that the railroad company was bound to so construct and maintain its track that the travel upon the street could cross the tracks safely with the exercise of reasonable, ordinary care.

*Held;* that the instruction, that the railroad company was not bound to repair the street between its rails, became immaterial and is not open to exception.

A city, in the absence of municipal regulation or agreement between the parties, does not surrender its supervision and control of its streets; and cannot very well do so while the statutory regulation exists which requires it at its peril to keep its streets safe and convenient for travelers.

*Held;* that the controversy whether the city or the railroad company is bound to keep that portion of the street lying within the rails of the railroad in repair becomes in any view a practical question only as between the railroad corporation and the city, rather than as between the parties to this suit.

While a street railroad company has the right to keep its track in repair so as to prevent depreciation by wear and tear, the city not opposing; and to keep the earth about its rails firm and secure; and the right of maintaining approaches to its rails at crossings so as to let teams pass over them easily, the propriety of imposing upon the company the duty of keeping the space between the rails in repair is not obvious to the court as necessary to counteract the ordinary wear and tear of the road produced by the feet of horses constantly passing over it. Other horses besides those of the railroad company pass over and upon the railroad tracks, especially where the chances for passing are narrow and the teams engaged in passing are numerous. And at crossings the, track is usually much more trodden by horses driven by travelers than by railroad horses.

EXCEPTIONS BY PLAINTIFF.

This was an action to recover damages for injuries sustained by reason of an alleged defective condition of the defendant's horse railroad.

The plaintiff claimed that while he was driving across the track of the railroad, in the street of. the city of Lewiston, the runners of his sleigh entered a depression between the rails, and as the runners struck against the further rail, and which he alleged was elevated above the road-bed between the rails, he was thrown from his sleigh and injured.

The verdict was for the defendant.

The case appears in the opinion.

*F. L. Noble and R. W. Crockett,* for plaintiff.

A street railway company is bound at common law, as well as by statutes, to keep and maintain its entire road including rails and road-bed in a reasonable condition of repair with the rest of the highway, so that the public may use the whole way with as little inconvenience and liability to injury as possible; and is liable for damages.

Counsel cited: *Western Paving & Sup. Co.* v. *Citizen St. R. Co.,* 10 L. R. A. 770; 128 Ind. 525, 540; *McKenna* v. *Met. R. R. Co.,* 112 Mass. 55; *Memphis P. P. & B. R. Co.* v. *State,* 87 Tenn.

746; *Oshkosh* v. *Mil. & L. W. R. Co.*, 74 Wis. 534; Am. & Eng. Ency. of Law, Vol. 23, pp. 978–9, 983 and note; *Osgood* v. *Lynn & Boston R. R. Co.*, 130 Mass. p. 493; *Cent. R. Co.* v. *State*, 52 N. J. L. 220; *Gillett* v. *West. R. Corp.*, 8 Allen, 560; Elliott on Roads & Streets, p. 594; *Rockwell* v. *3d Ave. R. R. Co.*, 64 Barb. 434, aff. in 53 N. Y. 625; *Fash* v. *3d. Ave. R. R. Co.*, 1st Daly, 143; *Worster* v. *42d St. etc. R. R. Co.*, 50 N. Y. 205; *Conroy* v. *23d St. R. R. Co.*, 52 How. Pr. 49; *Cline* v. *Cres. City R. R. Co.*, 43 La. Ann. 327, (26 Am. St. Rep. 187); *Woodman* v. *Metrop. R. R. Co.*, 149 Mass. 335; *Schild* v. *Cent. Park R. R. Co.*, 133 N. Y. 446, (28 Am. St. Rep. 658). *Penn. etc. Canal Co.* v. *Graham*, 63 Pa. St. 296; *Carpenter* v. *Cent. Park etc. R. Co.* 11 Abb. Pr. (N. S.) N. Y. 416; Elliot on Roads and Streets, p. 594; *Schild* v. *Cent. Park etc. R. Co.*, 16 N. Y. Super. Ct. 701; *Ashland St. R. Co.* v. *Ashland*, 78 Wis. 271; *Osgood* v. *L. & B. R. R.*, 130 Mass. 493.

*A. R. Savage and H. W. Oakes, F. W. Dana and W. F. Estey,* for defendant.

SITTING:  PETERS, C. J., WALTON, FOSTER, HASKELL, WISWELL, STROUT, JJ.

PETERS, C. J.  The writ and declaration, and the judge's charge are brought up on report, but none of the testimony.  An exception was taken to a ruling which may be very well understood from an examination of the charge.  The action is to recover damages for an injury sustained by the plaintiff from an accident occurring to him, by being thrown from his sleigh when crossing the track of the street railroad in Lewiston.  There are two specifications in the declaration alleging negligence against the railroad. One is for leaving a heap of snow on the side of the track by which the sleigh was upset, thereby causing plaintiff's injury.  We need not, however, dwell on this branch of the case, more than to state it as incidental to the second specification, inasmuch as no rulings in this part of the charge are claimed to be in any way objectionable.

The act of negligence secondly charged against the railroad relates to the alleged defective condition of its rails at the place where the accident happened, stated in the declaration as follows: "And further because the inner and outer rail of said railroad, where it curves around the corner of Lisbon and Pine streets as aforesaid, was raised above the level of said streets from two to three inches rendering that part of said streets at the corner of Lisbon and Pine streets dangerous and unsafe for public travel, all of which said dangerous and defective condition of said streets and said rails was then and there well known to said defendant company or could have been ascertained by the exercise of reasonable care."

On this point of the case the presiding judge, in his charge to the jury, made these observations: "That, then, is the second question of fact. The plaintiff says that, at the point of this corner, where the plaintiff crossed over, the rails of the defendant company had been either put or left by them two or three inches above the surface of the street, and that that height was a dangerous height, and made the crossing by a careful man dangerous, and, in fact, did cause a careful man a severe injury as he crossed. And the defendant answers that, first, by saying it is not true, and the rails weren't anywhere near so high, that they were not so high as to make it at all dangerous for a careful man to cross the street; and they say further—and that is a point made to me as Judge—they say further that, no matter whether their rails were above or below the street, that if they put their rails upon the grade in the first place, that they are protected, and that the fault in the difference in the elevation of the rails and the street is the fault of the city of Lewiston. I will only trouble you with the fact, gentlemen. *Now I am going to give you this rule: The railroad company, under the evidence in this case, wasn't bound as a whole to keep that street in repair; they were not bound to keep it in repair as between the rails even. They hadn't assumed the duty of keeping the street, or any part of it, in repair,—that duty was left upon the city of Lewiston, so far as the repairs of the street were concerned.* But I say further to you, that the railroad company,

coming into that street, rightfully putting down tracks to accomo-
date their cars, was bound to so construct and maintain its tracks
that the travel upon that street, with or without a team, could
cross those tracks safely with the exercise of reasonable, ordinary
care. They were not bound to so construct them or maintain
them that a careless man could go across in safety—an unthinking
man, a negligent man, could cross in safety—they are not bound,
as to the general public, to guard against every man's thoughtless-
ness; but I repeat that they are so bound, and it was their duty to
so construct and maintain their tracks, that a careful man, in the
exercise of ordinary care and watchfulness, could go across those
rails with safety. Now that may include sinking the rails to the
grade of the street, nearly or quite, or it may include the matter of
approaches; so that they must so arrange it that a man can get
over without hitting against the rails to any serious inconvenience.
That is, putting it generally, they were bound to keep their tracks
in such condition that a careful man, with the exercise of ordinary
care, could safely cross."

Exceptions are taken to what the judge said about there being
no responsibility upon the defendant railroad to keep the street in
repair so far as the space between its rails is concerned. In the
first place, it strikes us very forcibly that the remarks of the judge
on this point embrace an abstract proposition merely, which if
possibly in any aspect material, became entirely immaterial by the
subsequent instruction that, at all events, the railroad company
were under obligation to properly lay their rails, and to so main-
tain them that the passage over them at the crossings shall be safe
and convenient for travelers, even if it became necessary to elevate
or depress the rails from time to time in order to insure such a
situation.

But, should the ruling objected to be considered as prejudicial to
the plaintiff's cause, if it be a wrong ruling, then we do not hesi-
tate to go farther and declare the ruling, in its connection with the
other parts of the charge, to have been right. The city, in the
absence of municipal regulation or any agreement between the
parties, does not surrender its supervision and control of its streets,

and cannot very well do so while the statutory provision exists which requires it at its peril to keep its streets safe and convenient for travelers.    But those matters as between city and railroad may be regulated by some statutory provision, state or municipal, or by agreement.    Of course, the railroad company would be answerable to both the city and to individuals for any injury to the street caused by themselves, and is liable to a traveler who suffers an injury while crossing its rails if a defect exists in the location or situation of such rails in their connection with the street, however or by whomever the defect may have been caused.    And this liability arises from the duty imposed on a railroad company to so maintain its tracks, which are necessarily a considerable impediment to travel, that persons having occasion to cross them may do so with at least comparative safety.    If the city fail to do its duty the company is not excused from a, performance of the duty and obligation resting on it.    And such was clearly, in effect, the direction given by the judge to the jury.    Really, the controversy whether the city or the company is bound to keep that portion of the street lying within the rails of the railroad in repair becomes in any view a practical question only as between the railroad corporation and the city, rather than as between the parties to this suit.

The plaintiff's counsel urges the propriety of imposing upon the railroad company the duty of keeping the space between rails in repair so as to counteract the ordinary wear and tear of the road produced by the feet of horses constantly passing over it.    But other horses besides those of the railroad company pass over and upon the railroad tracks, especially where the chance for passing is narrow and the teams engaged in passing are numerous.    And at crossings the track is usually much more trodden by horses driven by travelers than by railroad horses.    There is no doubt that a railroad company would have the right to keep its track in repair so as to prevent depreciation by wear and tear, the city not opposing, and to keep the earth about its rails firm and secure, and the right of maintaining approaches to its rails at crossings so as to let teams pass over them easily; and as before inculcated in this

opinion they must do so, if not done by others and if necessary for public safety. See, as having some bearing on the question here, *Conway* v. *Lew. & Aub. R. R. Co.*, 87 Maine, 283.

The plaintiff contends that a city ordinance of Lewiston aids his contention. We think it does not. It reads thus: "The city reserve the right to make changes in the grade of streets and to make all necessary repairs or changes in water, gas or sewer mains or streets, and assume no liabilities for any damage caused by delay or interruption of cars from any cause whatever, but will relay any track disturbed by alteration or repairs of any gas, water or sewer pipes or mains."

*Exceptions overruled.*