VOL. 75, JANUARY TERM, 1918.        455

Bayshore Devel. Co. v. Bondfoey et al.—Syllabus.

BAYSHORE DEVELOPMENT COMPANY, A CORPORATION, *Plaintiff in Error*, v. B. C. BONDFOEY AND M. LEO ELLIOTT, COPARTNERS DOING BUSINESS AS BONDFOEY & ELLIOTT, *Defendants in Error.*

Opinion filed March 20, 1918.

1. Upon the trial of a cause the court should not instruct a verdict for one of the parties if there is substantial evidence before the jury sufficient to support a verdict for the other party. Nor where from the evidence adduced reasonable men might differ in opinion as to whether the issues should have been found for one party or the other.

2. A plea which avers no facts that might not be shown in evidence under the general issue should be treated as the general issue.

3. An architect owes to his employer the duty of exercising and applying skill and ability, judgment and taste reasonably and without neglect in the preparation for the proposed structure of the plans and specifications which he was employed to prepare

4. In an action by the owner of a building against an architect who was employed to furnish plans and specifications for the structure, for damages resulting from the latter's negligence and lack of skill in preparing the plans and specifications; the measure of damages is an amount equal to the difference between the value of the building as actually designed and constructed and the value as it would have been if the building had been properly designed and constructed. Loss of rentals due to delays in occupying the premises are too remote and speculative to be considered.

Writ of Error to Circuit Court for Hillsborough County, F. M. Robles, Judge.

Judgment reversed.

*Howard P. Macfarlane* and *Shackleford & Shackleford,* for Plaintiff in Error;

*K. I. McKay* and *C. M. Phipps,* for Defendants in Error.

ELLIS, J.—The plaintiff in error brought an action in the Circuit Court for Hillsborough County against Bondfoey & Elliott, a copartnership composed of B. C. Bondfoey and M. Leo Elliott, architects, for damages to the plaintiff which it was alleged resulted from the defendants' negligence and lack of skill in preparing for the plaintiff certain plans and specifications for the construction of two residence buildings, and from defendants' negligence in the direction and supervision of the construction of said buidings which work they undertook to perform, and for a breach of warranty as to the effectiveness and sufficiency of certain stucco work as a safe, secure, substantial and weatherproof construction for the outside walls of the two buildings.

There was a trial by jury. After conclusion of the testimony the court directed a verdict for the defendants. A judgment was entered for the defendants, and the plaintiff took writ of error.

Two questions are presented: First, whether there was evidence sufficient to go to the jury upon the issues joined; second, what is the measure of damages?

If there was substantial evidence sufficient to support a verdict in behalf of the plaintiff, that is to say if in the evidence adduced before the court there was room for difference of opinion between reasonable men as to whether the issues should have been found in favor of the defendants, then the court erred in directing a verdict for the defendants. See Thiesen v. Gulf, Florida & Alabama Railway Co., upon rehearing, decided at this term; An-

derson v. Southern Cotton Oil Co., 73 Fla. 432, 74 South.
Rep. 975, L. R. A. (N. S.) 1917E, 715.

In the case of Rogers Co. v. Meinhardt & Co., 37 Fla.
480, 19 South. Rep. 878, the court said: If "there is con-
flicting evidence or a dispute as to what actually occurred
and any view that the jury might lawfully take of it will
sustain their findings for either party, the facts should
not be withdrawn from them.     To state the rule def-
initely, the judge should never direct a verdict for one
party, unless the evidence is such that no view which the
jury may lawfully take of it favorable to the other party
can be sustained."     See also German-American Lumber
Co. v. Brock, 55 Fla. 577, 46 South. Rep.   740;   Hills-
borough Grocery Co. v. Leman, 51 Fla. 203, 40 South. Rep.
680; Starks v. Sawyer, 56 Fla. 596, 47 South. Rep. 513;
Gunn v. City of Jacksonville, 67 Fla. 40, 64 South. Rep.
435.

The first count of the declaration was based upon the
alleged negligent failure to use skill and care on defend-
ants' part in the making and execution of the plans and
specifications.     It being alleged that the plaintiff em-
ployed the defendants as architects to make the plans,
specifications and drawings "for the erection of two cer-
tain residence buildings" on certain described lots in the
Morrison Grove Subdivision of the City of Tampa.     To
this count the defendants pleaded first, never promised
as alleged; third, not guilty; fifth, that defendants used
all ordinary skill and care that is customarily used by
architects in similar undertakings.     Issue   was joined
upon these pleas.     There were other pleas, but they were
eliminated either by motion to strike or demurrer.

The second count rested upon the alleged negligence of
the defendants in the matter of the direction and super-
vision of the construction of the buildings under the said

458 SUPREME COURT OF FLORIDA.

Bayshore Devel. Co. v. Bondfoey et al.—Opinion of Court.

plans and specifications and to issue certificates for payments to the contractor only when the defendants knew that the work was correctly and thoroughly executed. It being alleged that the defendants had for a valid consideration undertaken to perform that service. To this count the defendants pleaded, first, that they never promised as alleged; third, not guilty, and eighth, that the plaintiff placed other persons in authority over the defendants during the erection of the buildings and took charge of the supervision of the erection of the buildings, thereby relieving defendants of responsibility. Issue was joined upon these pleas. There were also other pleas to this count, but they were eliminated by demurrer or motion to strike. A plea numbered "Fifth" interposed to the second and third counts set up that the defendants used all ordinary skill and care that is customarily used by architects in similar undertakings. A demurrer was interposed to this plea as a plea to third count and the demurrer was sustained, but what disposition was made of it as a plea to the second count the record does not show. Apparently the case went to trial with no issue upon the plea.

The third count was based upon an alleged breach of warranty by the defendants whom it was alleged promised, guaranteed and warranted to the plaintiff that the stucco work called for by the plans and specifications would be a "safe and secure construction and said outside walls would be substantial and weatherproof." To this count the defendants interposed the same pleas that they interposed to the second count. Issue was joined upon the first, third and eighth pleas also upon the fourth plea which denied that the defendants promised, warranted or guaranteed the matters and things mentioned in the third count.

The first and second counts of the declaration are in tort growing out of a contract. The first plea was not applicable therefore. The fifth plea to the first count we think was covered by the plea of not guilty. See Rule 71 Circuit Court Law Actions, and should be treated as the general issue. Key West v. Baldwin, 69 Fla. 136, 67 South. Rep. 808.

The issue presented by the first count therefore was: Were the defendants guilty of a negligent failure to use skill and care in making up the plans and specifications for the two houses?

The duty owed by an architect to his employer is that he will exercise and apply his skill and ability, judgment and taste reasonably and without neglect. See 2 R. C. L. p. 400; Coombs v. Beede, 89 Me. 197, 36 Atl. Rep. 104.

Mr. Chief Justice PETERS speaking for the court in the Coombs-Beede case, said: "The responsibility resting on an architect is essentially the same as that which rests upon the lawyer to his client, or upon the physician to his patient, or which rests upon any one to another where such person pretends to possess some skill and ability, including taste sufficient to enable him to perform the required services at least ordinarily and reasonably well; and that he will exercise and apply in the given case his skill and ability, his judgment and taste reasonably and without neglect. But the undertaking does not imply or warrant a satisfactory result. It will be enough that any failure shall not be by the fault of the architect."

In Chappel v. Clark, 117 Mich. 638, 76 N. W. Rep. 62, the court said: "The question was, Had plaintiff exercised that degree of care and skill and that judgment which are common to the profession or business?" The case was one in which an architect sued the owner of a building for services rendered as architect. The arrange-

460        SUPREME COURT OF FLORIDA.

Bayshore Devel. Co. v. Bondfoey et al.—Opinion of Court.

ment was in parol.    The architect was also employed by
the defendant to superintend   the   construction   of the
building.    The suit was to recover the value of his ser-
vices in drawing the plans and specifications. The defend-
ant claimed that the plaintiff had not performed his work
with due and necessary skill   and care;   that the plans
were faulty, defective and unskillful.    Plaintiff recov-
ered verdict and judgment.    The court said the law re-
quires only the exercise of ordinary skill and care in the
light of present knowledge.    That if the plans and speci-
fications for those parts of the building which the plain-
tiff claimed were defective, were in fact justified by the
common knowledge upon such matters at the time and
meet the judgment and approval of those men ordinarily
skilled and experienced in their conclusion, the plaintiff
had complied with his contract.    See Blake on Archi-
tecture & Building, Secs· 39, 45, 46; Lottman v. Barnett,
62 Mo. 159; 6 Cyc. 34.

The first count particularizes wherein the defendants
failed to use ordinary skill and care in the preparation of
the plans and specifications.    It is alleged that they were
faulty in design, defective, insufficient and unsuitable for
the purposes for -which they were intended.    That the
stucco work was defective and faulty on account of ma-
terials called for in its composition   and   the manner of
construction; that the buildings were not rain proof; the
chimneys failed to draw.    On account   of such   defects
the buildings were entirely uninhabitable and useless to
plaintiff.

The case made by this count of the declaration as we
construe it is one in which the buildings were defective
and unfit for use because of improper or   unsuitable ma-
terial prescribed in the specifications   for   the "stucco"
work, the insufficient method prescribed for putting it on,

and defective plans for construction of the buildings and chimneys.

We have examined the evidence in the case and find that although there is no proof as to the defective composition of the material to be used for the "stucco" there was evidence sufficient to go to the jury as to whether the method provided by the specifications for applying it to the buildings was such as to show the proper care and skill which should have been exercised by the architect.    The evidence upon this subject was conflicting, it is true, but it was the province of the jury and not that of the court to determine the facts.

Mr. F. J. Kennard, an architect, testified that the buildings were "frame construction, stucco finish on the outside;" that the specifications were defective in regard to the stucco, it was not sufficient to make a water proof job, a weather tight job.    "This specification calls for lathing, wood lathing right on the siding, and then to be stuccoed with cement plaster finished three-eighths of an inch thick.    That is not the best and in my opinion there should have been tight board sheathing on the siding first, then weather proof paper and what we call strips or cleats to nail the lathing to, to form a key for the stucco."    That considering the location of the buildings the style of construction suggested by him "was more necessary than it would be in some other places."    That to place the stucco in the manner called for by the specifications he would "expect it to leak" a good deal.

Reference to the specifications shows that the lathing for the stucco was to be the same as that prescribed for lathing the interior of the house for plaster.    These specifications permitted the nailing of the laths to the studding or the perpendicular framing which consisted of pieces of 2 x 4 dressed and set up 16 inches on centres.

The specifications are silent on the subject of the dimensions of the chimneys, and the flue construction. There was evidence tending to show defective construction in this particular. There was also evidence tending to show faulty specifications regarding the "window flashings" "causing water to leak through the open joints" said Mr. Kennard. The specifications contain no provision on this subject except that the outside casings around windows to be "1 x 6 rabbetted on edge that comes next to stucco." The width of the rabbet is not specified. The question of whether a rabbet joint between a window casing and stucco siding for a house shows the exercise of ordinary or usual skill in preparing specifications by an architect for a residence to be erected in an exposed place was matter for consideration and determination by the jury. There was evidence to show that leaks developed throughout the entire structure wherever there happened to be a joining of the stucco to the woodwork.

All matters of inducement such as the employment of the architects, the holding of themselves out to the public as such, confidence reposed in them by plaintiff and the making of the contract for the plans and specifications, were admitted by the pleadings. See Cotton States Belting & Supply Co. v. Florida R. Co., 69 Fla. 52, 67 South. Rep. 568. This is conceded by counsel for the defendants in error in the brief.

We think there was error in taking the case as made by the first count from the jury.

As to the second and third counts we are unable to say that there was sufficient evidence in support of them to go to the jury.

The second count complains of the defendants' alleged negligence in supervising the construction of the buildings. There was nothing to show that the buildings were

not constructed as the specifications provided they should be, nor that the defendants were negligent in the discharge of that duty. The testimony of H. Guy Nickerson upon this subject seems to have been a matter of opinion based upon the fact that the roof leaked. The testimony of Mr. Kennard as to the insufficiency of the flashing around the windows related it seems to the alleged defective specifications.

The third count we also think was unsupported by any evidence legally sufficient to warrant a verdict for the plaintiff.

There was no evidence of a guaranty or warranty made by the defendants that the stucco work called for by the specifications would be a "safe and secure construction, and said outside walls would be substantial and waterproof." The evidence offered by plaintiff to the effect that it was not, was admissible, as tending to show lack of ordinary and reasonable skill in the preparation of the specifications. The architects undertaking does not imply or guarantee a perfect plan or satisfactory result, and there was no evidence sufficient to support a verdict on this count for the plaintiff of the existence of a specific promise or guaranty by the defendants. The testimony of Mr. Nickerson we do not consider sufficient for this purpose. What he said about not accepting the plans until being assured as to the character of the construction and that it would be safe, amounted to nothing more than an affirmance by the defendants of the duty which rested upon them as architects to prepare specifications with ordinary and reasonable skill.

The question of the measure of damages is presented by several assignments of error resting upon the court's rulings in the rejection of evidence offered by the plaintiff as to the damages sustained.

Blake, in his work on Architecture and Building lays down what we consider a safe and sound rule. It is, says he, "an amount equal to the difference between the value of the building as actually designed and constructed and the value as it would have been if the building had been properly designed and constructed." p. 69. And says the same author "when on account of defects or of some oversight on the part of the architect it is necessary that repairs be made the claimant cannot make at an unnecessary expense or in an unnecessarily extravagant form and recover as damages the amount of his disbursements. He must confine his claim to such sum as will represent the cost of effecting the repairs as economically as it is possible to effect them consistent with proper workmanship and construction." This rule seems to take no account of loss of rentals nor delays in occupying the premises which are too remote and speculative to be considered.

For the error pointed out we think the judgment should be reversed, and it is so ordered.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND ELLIS, J .J., concur.