303 So.2d 380 (1974)
PALM BAY TOWERS CORPORATION, Appellant,
v.
CRAIN & CROUSE, INC., Appellee.
McCLOSKEY & CO., INC., Appellant,
v.
CRAIN & CROUSE, INC., Appellee.
Nos. 74-300, 74-333.
District Court of Appeal of Florida, Third District.
October 29, 1974.
Rehearing Denied December 9, 1974.
*381 Katz & Rosen, Coconut Grove, for Palm Bay Towers Corp.
Frates, Floyd, Pearson, Stewart, Proenza & Richman and Alan G. Greer, Miami, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, for McCloskey & Co., appellants.
Knight, Peters, Hoeveler, Pickle, Niemoeller & Flynn, Miami, Richard H.W. Maloy, Coral Gables, for appellee.
Before BARKDULL, C.J., and HENDRY and NATHAN, JJ.
PER CURIAM.
This is a consolidated appeal from a final judgment in favor of the defendant-appellees which followed a non-jury trial.
The appellants are the owner and general contractor of the Palm Bay Towers condominium apartment project, a highrise luxury condominium located east of Biscayne Boulevard at N.E. 67th Street in the *382 City of Miami. The appellee, Crain & Crouse, Inc. [hereinafter Crain], was engaged as the structural engineer of the piling and foundation system for the Palm Bay Towers. Appellee, Continental Casualty Company, was joined in the complaint as Crain's liability insurer.
Appellants filed a complaint alleging negligence by Crain in the design, inspection and supervision of the construction of the piling and foundation system. It was alleged that as a result of Crain's negligence the piling and foundation system of the structure was defective, requiring substantial corrective work and resulting in a delay of the building's completion date as well as substantial expense to the appellants.
The trial of this cause was directed solely to the question of liability raised by the complaint. The issues before the court were complex and technical in nature, and the trial lasted some eight days. The transcript of testimony consumes almost 1,500 pages, and the record includes numerous trial exhibits, depositions and other documents.
In the final judgment, the trial judge specifically found no negligence on the part of Crain, no breach of duty owed to either of the appellants and no act or omission on the part of Crain's representatives which proximately caused the damage alleged by the appellants.
In reaching this determination, the court rendered certain factual findings based upon its interpretation of the evidence. First, the court noted that negligence was asserted against Crain based on the engineers' redesign of piling under "pile caps" in the foundation system. The redesign eliminated certain steel reinforcing cages and casings from the piles.
However, the court found that the alteration was reasonable in light of subsurface information provided to the engineers by the general contractor, directly and through subcontractors, and upon which the engineers relied.
From the evidence adduced in the record, this subsurface information pertained to the level of a shelf of oolitic limestone. Initial soil borings which Crain caused to be made by another engineering firm, Ardaman & Associates, indicated that the rock formation was farther beneath the surface than was ultimately indicated to Crain following jobsite excavations.
Based in part on the initial soil findings, Crain devised plans and specifications for the building to rest on four "pile caps" which would be supported by several hundred piles.[1] The piles were originally designed to be reinforced by the steel casings and cages which were intended to provide lateral support for the piles from the force exerted by the superstructure as well as during the time in which further excavation was undertaken around the piles so that the pile caps could be constructed.
The appellee subsequently redesigned the plans to remove the steel reinforcing from the piles when the initial jobsite excavations undertaken by a subcontractor indicated that the limestone shelf was at a higher elevation than originally discovered by Ardaman's soil borings. Therefore, it was determined by Crain that the steel could be removed as a cost savings factor because the pilings would receive the necessary lateral support from the rock which previously was believed to be too low to provide support.
The evidence indicates further that in April, 1969, after Crain had redesigned the piling and foundation system and after the subcontractor had experienced excavation problems on the site, Ardaman was requested to make additional soil borings to determine the level of the rock. These *383 borings confirmed what was discovered by the first soil borings.
One of the main issues at trial was whether or not the engineers should have relied primarily on the soil borings or upon the information conveyed by the contractor and subcontractor concerning the rock level encountered during the excavations.
The trial court found that the engineers could reasonably rely upon the jobsite information, and that the evidence indicated that one of the reasons for the defective condition of the pilings was the over-excavation of the subsurface area by a subcontractor.
Further, the court found that the over-excavation, which rendered Crain's redesign ineffective, was not communicated to the engineers nor was the condition readily observable to Crain due to the presence of water in the foundation site.
After a review of the record, briefs and arguments of counsel in this case, it is our conclusion that the evidence supports the trial court's determination that Crain's alleged negligence was not the proximate cause of damage to the general contractor, appellant McCloskey & Co., Inc.
For purposes of this appeal, McCloskey has conceded that the court made a correct finding that the pile-cap areas had been over-excavated by one of its subcontractors causing the defective condition. Therefore, it is our conclusion that the general contractor has failed to prove negligence by Crain in relying upon the information furnished by the contractor, where the latter also did not communicate satisfactorily to the engineers that the pile-cap areas in question had been over-excavated.
We have considered all four points raised by the appellant McCloskey in its brief in light of controlling legal principles, and have concluded that no reversible error has been demonstrated by the general contractor. We find greater difficulty, however, with regard to the trial court's findings affecting the appellant-owner, Palm Bay Towers Corporation.
As a general rule, an engineer, like an architect, owes his employer a duty to exercise and apply his professional skill, ability and judgment in a manner which is reasonable and without neglect. Bayshore Development Co. v. Bonfoey, Fla. 1918, 75 Fla. 455, 78 So. 507; Pittman Construction Co. v. City of New Orleans, 178 So.2d 312 (La. App. 1965); Cf., A.R. Moyer, Inc. v. Graham, Fla. 1973, 285 So.2d 397.
In our view, the trial court in the case at bar reached an incorrect legal conclusion based upon the evidence in the record. Our review of the record convinces us that the engineers were negligent in several respects in the design, inspection and supervision of the construction of the piling and foundation system.
First, the record is clear that the City of Miami building department required full-time engineering control at the project site. Mr. Robert E. Ferencik, director of the city's building department, testified that a job the magnitude of the Palm Bay Towers project requires full-time engineering supervision, and the city also required reports to be filed with the city in connection with the construction of the pilings.
The individual responsible for jobsite supervision for Crain was one, David Honderich, who was not a registered engineer. Our interpretation of Fla. Stat. § 471.02(5) and (7) is that a qualified "professional engineer" must render direct and active jobsite supervision and inspection.
In this case, the engineer of record, Mr. George T. Crouse, testified that he thought he was only at the jobsite on one occasion. It is our opinion that had the actual engineers more directly supervised and inspected the excavations in the pile-cap areas the problems eventually experienced with the piling and foundation system likely would have been avoided.
*384 Moreover, the record reveals that the original foundation plans were completed sometime in the latter part of 1968 by Crain. The original plans, which called for the steel reinforcement, then were submitted to the city building department, and approved.
Thereafter, Ferencik testified a pre-construction conference was held with the city on March 19, 1969, which was approximately one month after Crain had redesigned the plans, eliminating the steel reinforcement. Honderich attended the meeting, representing Crain.
Ferencik was not informed of any redesign of the foundation plans at the meeting. No reports later filed with the city by the engineer revealed any redesign of the plans. In fact, the record contains a letter, dated July 25, 1969, from Honderich to the city which certified to the building department that the piles had been installed in compliance with the structural requirements and the original design plans and specifications on record with the city.
Subsequently, the job at the site was halted by the city building department on November 14, 1969 when it was learned that the pilings in two of the pile-cap areas lacked steel reinforcement and therefore did not comply with the South Florida Building Code.
Appellees argue vigorously that it was the responsibility of the general contractor to communicate any design changes in the plans to the city. The plans originally were submitted by the contractor; however, before the city accepts a plan, it must be signed by the engineer. We are convinced that Crain's failure in this case to properly notify the city of its redesign of the foundation plans clearly amounted to a neglect of its duty to the owner.
We also note the following construction specifications which are contained in the record:
"0230.10 No piles shall be installed by the contractor unless the representative of the engineer is present. The piling contractor shall comply with the directions of the engineer and make available all data, information and other pertinent items upon his request. The engineer shall have authority to reject any and all piles or materials that do not meet the requirements of the above specifications.
* * * * * *
"0230.13 Complete records of each pile shall be kept by a professional engineer to be retained by the Owner and shall be submitted in quadruplicate to the Architect. The records shall be certified by the contractor's superintendent. The records shall include length, augering resistance for the last three feet of length, top elevation, results of any adjustments, tests or borings and all other pertinent data relative to the pile installation. The same engineer shall insure and certify that piles are installed in accordance with design, building code, and contract requirements." [Emphasis supplied.]
An expert witness for the appellants, Charles Mansur, also testified that Crain may have had an opportunity to determine the level of the limerock by observing the drilling being performed in the pile-cap areas.
We are not unmindful of the expert testimony for the appellees by Dr. Wen Chang and Professor John Stevens, both of the University of Miami, upon which the trial court relied. Each testified that the redesign made by Crain comported with sound engineering practice if the level of rock was higher, thus providing the necessary lateral support to the pilings.
Our departure in reasoning from the trial court travels upon the latter's conclusion that the engineers' activity in the supervision and inspection of the jobsite construction for possible deficiencies in the redesign did not amount to a neglect of its professional responsibility to the owner. We think the owner has sufficiently proven negligence, entitling it to recover damages, if any.
*385 Therefore, for the reasons stated and upon the authority cited, the judgment appealed is affirmed as it applies to the appellant, McCloskey & Co., Inc. However, that portion of the judgment entered against the appellant, Palm Bay Towers Corporation, is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.
Affirmed in part; reversed in part, and remanded.
NOTES
[1] The Palm Bay Towers building is designed in the shape of a "Y", with three of the "pile caps" approximately at the extremities and one at the point approximately where the "Y" intersects.