LOCKARD *v.* VAN ALSTYNE.

1. INTOXICATING LIQUORS—CIVIL DAMAGES—EVIDENCE—ADMISSI-
BILITY.

In an action under the civil-damage act (section 5398, 2 Comp.
Laws) against a druggist and his sureties for the unlawful
sale of intoxicating liquor to plaintiff's husband, testimony
of the county treasurer that others were engaged in the drug
business in the same city was properly refused, in the absence
of any showing that such druggists had sold liquor to plain-
tiff's husband.

2. EVIDENCE—CONCLUSIONS—PRELIMINARY FACTS—CROSS-EXAMI-
NATION.

The admission of testimony, objected to on the ground that it
called for conclusions rather than statements of facts, is not
error when it is apparent that the statements were prelimi-
nary in their nature and were followed by detailed state-
ments, since on cross-examination further details could be
obtained if desired.

3. INTOXICATING LIQUORS—CIVIL DAMAGES — EVIDENCE — HEAR-
SAY EVIDENCE—MATTERS BROUGHT OUT ON CROSS-EXAMINATION.

Where, on cross-examination, plaintiff had testified that she
had not forbidden defendant to sell intoxicating liquor to her
husband, it was proper, on redirect examination, to give her
reasons for not doing so; and testimony that her husband
said it would do no good to prohibit the selling of liquor to
him, that he would get it anyway, is not objectionable as
hearsay, it being a statement of fact.

4. SAME—CIVIL DAMAGES—EVIDENCE—HEARSAY EVIDENCE—RES
GESTÆ—COMPETENCY.

Where a witness, a physician, testified that, in making a pro-
fessional call upon plaintiff in her home, witness saw her
husband in a partially intoxicated condition, that he was
drinking liquor out of a bottle, and that he asked witness if
he would have some. *Held*, that such statement was admis-
sible as part of the res gestæ, and tended to show the drink-
ing habits of plaintiff's husband; and, when considered in
connection with the testimony showing that he secured
whisky from defendant in bottles and took it home, might be
some evidence of the drinking of the very whisky sold by the
defendant.

5. APPEAL AND ERROR—HARMLESS ERROR—HEARSAY EVIDENCE.
Where, on the trial, defendant's counsel called one of plaintiff's counsel as a witness and by implication charged him with advising a witness, who had been subpoenaed for plaintiff, to get out of town on a certain train, the error, if any, in permitting said counsel, on cross-examination, to state that he had received information that said witness would give certain testimony, but that on talking with the witness himself he discovered that he would not so testify, was not prejudicial.

6. INTOXICATING LIQUORS—CIVIL DAMAGES—EVIDENCE—ADMISSIBILITY.
The admission of plaintiff's testimony that her husband engaged in a fight and directly afterwards went into defendant's store and remained nearly two hours, and that when he came home he was intoxicated, was not prejudicial to defendant, since he could not contend that plaintiff's husband became intoxicated by visiting his store, and such testimony indicated that he must have been intoxicated before he went there.

7. SAME—CIVIL DAMAGES—EVIDENCE—COMPETENCY.
Testimony of the employer of plaintiff's husband that her husband drew money from him nearly every day and went immediately to defendant's store and came back with whisky and drank it in the shop and was intoxicated, was competent as bearing on the habits of her husband, and also on the fact that defendant was furnishing him liquor, and rebutted the idea that the liquor was sold for any other purpose than as a beverage.

8. SAME—EXPERT WITNESSES—COMPETENCY.
Testimony of physicians as to the causes which might have produced a miscarriage, no objection having been made that the testimony was not admissible under the pleadings, was not prejudicial to defendant, where, in answer to hypothetical questions, they testified they would be unable to state what cause produced said miscarriage.

9. SAME — CIVIL DAMAGES — EVIDENCE — PROOF OF OTHER OFFENSES—GENERAL RULE—EXCEPTION.
It is the general rule that proof of one offense cannot be admitted to prove another, yet, where it is necessary to show a particular intent in order to establish the offense charged, proof of acts of the same kind is admissible to show such intent; and where, under the theory of the defense, as far as disclosed, it was claimed that sales of intoxicating liquor

were lawfully made for medicinal purposes, it was competent to prove sales to third parties of such liquor to be used as a beverage. *Hilliker* v. *Farr*, 149 Mich. 444, distinguished.

10. SAME—CIVIL DAMAGES—EVIDENCE.

Testimony that a druggist sold beer to be drunk upon the premises, and that he kept a refrigerator in which such beer was stored, was competent as bearing upon the good faith of the claim that the liquor was sold for medicinal purposes.

11. SAME.

The report of defendant to the prosecuting attorney showing sales of liquor to plaintiff's husband was properly received in evidence, there being other evidence that such sales were unlawfully made.

12. SAME—CIVIL DAMAGES—INSTRUCTIONS.

In such action, an instruction that if defendant made sales of intoxicating liquor to plaintiff's husband for any other purposes than those provided by the statute he would be liable in damages, was a correct statement of the law. *Merrinane* v. *Miller*, 148 Mich. 412, distinguished.

Error to Van Buren; Des Voignes, J. Submitted November 16, 1908. (Docket No. 63.) Decided March 3, 1909.

Case by Carrie E. Lockard against Charles H. Van Alstyne, principal, and Matthew Van Alstyne and Fred Niffenegger, sureties, under the civil-damage act. There was judgment for plaintiff, and defendants bring error. Affirmed.

*Barnard & Lewis*, for appellants.

*W. G. Bessey* and *Benjamin F. Heckert*, for appellee.

MONTGOMERY, J. This action was brought under the civil-damage act against the defendants Charles H. Van Alstyne, as a druggist, and his codefendants, as sureties. The declaration alleges that between the 27th of April, 1907, and the 26th of December, 1907, unlawful sales of liquor were made to plaintiff's husband, and that in consequence of the sales of liquor the husband used profane and abusive language to plaintiff, and she was injured in

her means of support.   The plea was the general issue, and on the trial before a jury plaintiff recovered a verdict of $750, upon which judgment was rendered, and the defendants bring the case here for review on error.

The record contains 61 assignments of error, but even this liberal number seems not to have been sufficient to cover the points desired to be raised, for under the 59th assignment of error 5 distinct questions are raised, under the 60th 15 distinct questions are presented, and under the 61st 25 questions are sought to be raised.   The learned trial judge must have been very unfortunate indeed if he was guilty of committing as many errors as he stands charged with on this record, namely, something more than 100.   Fortunately for the administration of justice in his circuit, we are able to say that we think the defendant's counsel are seriously mistaken in supposing the trial to have been so replete with error.   The testimony on the part of the plaintiff tended to show that the defendant Van Alstyne, commencing with the 29th of April and continuing to the 19th of December, reported to the prosecuting attorney sales having been made to Bradford Lockard of whisky from time to time, consisting of two, three, four, and up to seven ounces of whisky at a time, and in many instances these sales were on consecutive days, as reported.   Other testimony on behalf of the plaintiff tended to show even a larger number of sales than these by the defendant, and there was abundant testimony tending to show that during this period the plaintiff's husband became at times intoxicated and used abusive language towards her, so that there was ample justification for a verdict in favor of the plaintiff upon the facts.   But it is contended that error was committed in the progress of the trial in the admission of testimony, in the remarks of counsel, in the refusal of the court to submit special questions, in refusing defendants' requests to charge, and in the charge of the court as given.

The first assignment discussed is the refusal of the court to permit evidence on cross-examination of the county

treasurer to show that other druggists were engaged in business in the city of South Haven. Of course it goes without saying that this testimony in and of itself was of no consequence whatever. It was intimated by the defendants' counsel that they would follow it up by showing that other druggists sold the plaintiff's husband liquor. If defendants were prepared to do this, it would be immaterial as affecting the plaintiff's case as to whether such druggists had filed bonds or not. The fact of the sale by other druggists, in so far as it tended to account for the condition of plaintiff's husband, might have been admissible; but whether the place at which such sale was made was a drug store which had complied with the law or not would be unimportant. It is to be noted that, so far as the record discloses, no subsequent offer was made to show any such state of facts as suggested by counsel.

Numerous assignments of error are based upon the claim that witnesses were permitted to testify to conclusions rather than to facts. To illustrate the captious nature of these objections, we quote two consecutive questions and answers propounded to the plaintiff:

"*Q.* You may state whether or not he did support you between the 27th of April, 1907, and the time you commenced this suit?
"*A.* No, sir."

Defendant's counsel moved to strike out the answer. The next question propounded was:

"*Q.* Now state to the jury in what respect there was a failure to furnish you with the necessary provisions and clothing during that time."

It is perfectly obvious that the first question was preliminary, with the purpose of immediately following it with the details of the plaintiff's deprivation, and it may be said of all the questions objected to upon this ground that, in so far as they were not preliminary in their nature, they related to questions of fact which might properly be stated in the manner in which they were, leaving

the defendants the opportunity to cross-examine as to details if they sought to enter upon them.

The next group of errors relates to rulings on testimony which counsel denominates as "grossly hearsay." This testimony was admitted upon redirect examination of plaintiff. On cross-examination the plaintiff testified as follows:

" I never went over to Van Alstyne's and forbid them selling to him. Yet he was coming home in a beastly state of intoxication. I never forbid them selling him liquor because I have ofttimes spoken of going and forbidding Van Alstyne selling him, and he would only swear at me and say it would do me no good. The more trouble I made him the worse he would be."

On redirect examination plaintiff's counsel asked:

"*Q.* Counsel asked you whether you had notified Mr. Van Alstyne not to sell your husband whisky?
"*A.* I didn't go and tell him myself.
"*Q.* But you did talk of doing that to him?
"*A.* Yes, sir; I have.
"*Q.* What did he say and do about it?
"*A.* He said it would make no difference, he would get it anyway, and he said I must not go over there and say one word to him about it."

A motion was made to strike out this testimony as hearsay. It is perfectly manifest that this testimony was redirect examination of what had been brought out on cross-examination. The most that can be said against it is that it was unnecessary to have the witness repeat what she had already testified to; but, the defendants having drawn out the fact that she had failed to notify the defendant to refrain from selling her husband intoxicants, it was entirely proper for her to give her reasons on redirect examination, and this was not in any objectionable sense hearsay testimony. It was a statement of fact.

Another item of so-called hearsay testimony: Dr. Woolsey, a witness for the plaintiff, testified that at one time when he was attending upon plaintiff he saw her husband partially intoxicated, and, when asked if he had ever seen

him drinking intoxicating liquors in the house, replied
that he had.   He proceeds:

"I went out into the second room from the front room
to get water for my medicine, and he didn't know I was
coming, of course, I don't suppose, and he was drinking
something out of a bottle, and I patted him on the back.
I says—

"*Mr. Barnard* (interrupting): I object to what he
said.

"*A.* All right.   He was drinking out of a bottle, and
he asked me if I would have some.

"*Mr. Barnard:* I move to strike it out as hearsay."

This testimony, including the statement made at the
time, was entirely competent.   The statement was a part
of the res gestæ, and it tended to show the drinking hab-
its of the plaintiff's husband, and, when connected with
the testimony showing that the plaintiff's husband secured
whisky from the defendant in bottles and took it home,
it might well be found by the jury to have been evidence
of the drinking of the very whisky sold by the defendant.

W. G. Bessey, one of the plaintiff's counsel, was called
to the stand by defendants' counsel, and testified, in an-
swer to questions propounded to him:

"I know Mr. Henning; yes, sir.   *   *   *   I think
he was in this court-room day before yesterday, yesterday,
and today.   I subpœnaed him; yes, sir.

"*Q.* He was the man referred to by the little boy as
drinking with his father in Van Alstyne's back room,
wasn't he?

"*A.* I think he was, yes.   I didn't find out over at A.
C. Martin's this noon that he hadn't drank any whisky in
four years, and sent him home; no, sir.   I didn't tell him
to get out of town on that train; no, sir."

On cross-examination the witness stated:

"I did not talk with Mr. Henning about this case be-
fore I subpœnaed him.   Mr. Knapp talked with him.
And I got my information from Mr. Knapp; yes, sir.

"*Q.* I want to ask you what he said about it to—your
understanding was that he would testify that he did drink
in there, wasn't it?"

155 MICH.—33.

Under objection, the witness answered:

"*A.* Yes, sir.   I have talked with him since he came here; yes, sir.

"*Q.* What did he say about it to you ?

"*A.* About what he would testify to ?

" *The Court:* I have some doubt whether you can show that.

"*A.* He didn't say to me that he could testify to anything that would be beneficial; no, sir.   Or to my client."

Had this testimony been offered as affirmative testimony, it might in part be subject to the objection of being hearsay, although, in view of the last statement of the witness, we cannot conceive how it would have been prejudicial; but defendants' counsel had by implication charged the plaintiff's counsel with having advised a witness to get out of town on a certain train, and this a witness who had been subpœnaed by him as a witness for the plaintiff.   It is not unnatural that the plaintiff's counsel should desire to resent this imputation, if unfounded, and his connection with the subpœnaing of the witness and the reason for not calling him was essential to be shown in order that the jury might correctly understand his conduct.   The most that can be derived from the testimony of this witness is that he had received information that the witness would give certain testimony, but that upon investigation by a talk with the witness himself he discovered that the witness would not so testify.   This could hardly be deemed prejudicial to the defendant.

The next subdivision of defendants' brief discusses objections to the testimony of the plaintiff tending to show that her husband was engaged in a fight in the fore part of November.   In answer to a question as to whether he was intoxicated at the time, she replied:

"I could not say whether he was intoxicated at the time of the fight or not."

A motion was then made to strike out this testimony, which was denied, and the following occurred:

"*Q*. Do you know where your husband went after the
fight was over ?

"*A*. I do.  He went directly to Van Alstyne's drug
store.

"*Q*. Do you know how long it was before he returned
to his home ?

"*A*. It was nearly two hours.

"*Q*. What was his condition when he came home ?

"*A*. He was intoxicated when he came home."

It hardly lies in the mouth of the defendant to say that
plaintiff's husband became intoxicated by visiting his
place of business.   This testimony would indicate that he
must have been intoxicated before he went there, if there
is any good faith in the defense in this case.

It is urged that the court was in error in permitting the
employer of plaintiff's husband, Mr. Knapp, to testify to
the fact that Lockard drew money from him almost every
day, and went immediately to Van Alstyne's, and came
back with whisky, and drank it in the shop, and was in-
toxicated.   It is said that this testimony was not admis-
sible as bearing upon the plaintiff's damages, as she was
not entitled to recover for the money spent by her hus-
band, citing the case of *Friend* v. *Dunks,* 39 Mich. 733.
The circuit judge in the present case charged the jury in
response to defendants' request:

" You are further instructed, if the plaintiff is entitled
to recover at all, she cannot in this action recover for the
money paid to the druggist, Van Alstyne, for the sales
of liquor mentioned in the druggist's reports and offered
in evidence in this case."

We think, however, the testimony was competent for
another purpose, and it was so treated by the trial judge.
It was proper as bearing upon Lockard's habits, and also
on the fact of Van Alstyne's furnishing liquor, and it re-
buts the idea that he was selling liquor for medicine or
for any other purpose than as a beverage.

Two physicians were called, who testified that the plain-
tiff was in a nervous state, and gave testimony tending
to show that this state might be attributed to mental

worry. They were also asked as to whether a miscarriage which plaintiff suffered might be attributed to worry over the husband's conduct. It is now contended that these inquiries were foreign to the issue, as a miscarriage was not counted on in the declaration. As to the testimony of Dr. Woolsey, no objection upon any such ground appears to have been made. On the contrary, the only objection was that the doctor had said that he was not an expert. He had testified, however, that he was a physician and surgeon, had graduated from the Detroit College of Medicine, and had practiced his profession at South Haven. He was only called upon to give an opinion as a medical man as to the conditions which he observed, and what causes might lead up to such conditions. This he certainly was competent to do. Dr. Webster was called on December 9th to treat the plaintiff, and found her afflicted with emaciation and nervousness, and was informed that she had had a miscarriage about two weeks before. He was then asked to state how such a condition as he observed might be produced. This was objected to by defendant's counsel as incompetent, irrelevant, and immaterial and too remote. The answer was:

"The nervous condition is almost invariably produced in any case by worry."

The question was again propounded:

"From your medical knowledge and the learning of your profession and your experience in your profession, would you be able to assign any cause for the miscarriage or nervous condition in which you found her, and from which you learned her condition had been?

"*Mr. Barnard:* I want an objection on the record now. I object to it as incompetent, irrelevant, and immaterial. First place, it is too remote, and in no way connecting the defendant with it."

Which objection was overruled. The answer was:

"As to miscarriage, I would be unable to state, as there was very little trace of it at the time I was called. As to nervousness, I would state as I did before that it was undoubtedly due to worry."

A hypothetical question was then propounded, and a similar answer given, namely:

"Such conditions might cause worry. It would depend altogether on the temperament of the person."

It will be noted that there was no specific objection that this testimony was not admissible under the pleadings in the case, but, more than this, the testimony as to the miscarriage was not prejudicial, as the doctor expressly stated that he would be unable to say what would cause the miscarriage. There was no error committed to the prejudice of the defendants.

It is next urged that the court was in error in permitting evidence, on cross-examination of defendants' witnesses, to show improper sales of liquor to third parties, and the case of *Hilliker* v. *Farr*, 149 Mich. 444, is cited. We think this case is clearly distinguishable from that. In the present case the sale of liquor to be drunk as a beverage by the defendant Van Alstyne was per se unlawful. On the other hand, sales for medicinal purposes were perfectly lawful. It was the theory of this defense, so far as a theory is disclosed, that the sales to Lockard were made in the regular course of defendant's business, and were lawful sales of liquor to be used by Lockard for medicinal purposes. Now, as bearing upon the question of intent and purpose with which these sales were made, it was entirely competent for the plaintiff to show that the practice and custom of the defendant was to make sales of liquor to be used as a beverage. In *People* v. *Seaman*, 107 Mich. 348, the general rule that proof of one offense cannot be admitted for the purpose of proving another was asserted, but the exception which rules the present case was recognized, and it was held that, where it was necessary to show a particular intent in order to establish the offense charged, proof of previous acts of the same kind is admissible for the purpose of proving guilty knowledge or intent, or, where it is claimed that the thing done is the result of an accident, proof of a like occurrence under like

conditions has been held admissible, as where the question is whether a fraud has been perpetrated. So in this case, if the defendant was commonly engaged day after day in selling liquor as a beverage, the theory or claim that these frequent sales to Lockard were made in good faith for medicinal purposes is entitled to little credence. And while on this subject we may add that the charge of the circuit judge which indicated to the jury that these circumstances were circumstances to be considered in determining the fact was entirely proper. For the purpose indicated it was proper to show on the cross-examination of the defendants' witnesses that they drank beer themselves on these premises, that a refrigerator was kept in the store in which beer was stored, and that beer was sold by the case. It all bore upon the question of whether the defendant was conducting the business lawfully, and upon his good faith and intent. It is true that the mere fact that a witness was in the habit of drinking beer does not affect his credibility, but the facts that one employed in the drug business, selling intoxicating liquors only for medicinal purposes, permits beer to be drunk upon the premises and sells beer by the case and has all the requisite conveniences for that purpose, have some relation to the question of whether he is acting in good faith or not.

It is contended that error was committed in receiving in evidence the statement made to the prosecuting attorney by the defendant Van Alstyne showing sales of liquor to Lockard. It is said that no proper foundation had been laid for its reception. The answer to this is that no such objection was urged on the trial. It is secondly contended that there was no testimony tending to show that the sales set forth were unlawful sales. The answer to this is that there is abundant evidence that the liquor was not sold for medicinal purposes, but to be drunk by the plaintiff's husband as a beverage.

It is further claimed that there is no proof that the Bradford Lockard mentioned in the reports was the plaintiff's husband. One of the defendant's clerks was called

as a witness and testified to numerous sales made to Bradford Lockard, and sufficiently identifies the party to whom the liquor was sold with the plaintiff's husband.

Further objection is made that the defendant's attention had not been called to these sales. We assume that the point attempted to be made is that the evidence of sales is not admissible as impeaching the testimony. Defendant in fact did not take the stand, but the testimony is admissible as affirmative evidence to show the want of good faith.

This brings us to a consideration of what may be deemed the chief contention of defendants' counsel, namely, that the plaintiff could only recover for injuries resulting from unlawful sales of liquor when such sales were made to a person in the habit of becoming intoxicated or to a person while intoxicated. Upon this subject the circuit judge charged the jury:

"A druggist may sell liquors only for medicinal, sacramental, mechanical, or scientific purposes. If he sells for any other purpose, makes general sales for any other purpose than that authorized by law, he sells at his peril. A druggist is given the privilege under the law to make sales of liquor upon the theory that he, being such druggist or pharmacist, will make such sales in the capacity of a druggist for the purposes that are recognized to be not offensive to the police regulation of the liquor law of this State and in compliance with the statute. If he sells intoxicating liquor indiscriminately and for a beverage and produces intoxication or drunkenness resulting in injury, he is liable under the law, under this declaration."

This is claimed to be in conflict with the case of *Merrinane* v. *Miller*, 148 Mich. 412. We think that case does not necessarily rule this. The gist of the action in that case was the selling of liquor to a man in the habit of becoming intoxicated or at times when he was intoxicated, and the court held that it was immaterial whether defendant sold out of hours or in hours, but permitted evidence that sales were made out of hours as bearing upon the wantonness, recklessness, or carelessness of defendant in

the way he was dealing with the plaintiff's husband. This charge of the trial court was sustained, but in referring to the case of *Peacock* v. *Oaks*, 85 Mich. 578, where it was held there could be no recovery under the statute for injuries caused by the selling or furnishing of liquor to another, unless such selling or furnishing was in violation of law, it was said:

"Whether this broad statement of the law may not require some qualification it is unnecessary to determine in this case. Plaintiff's counsel conceded that plaintiff could only complain of illegal sales, but contended that among such sales were included sales after hours or on Sundays, etc. We think the instruction properly limited the effect of such sales."

As applied to the issue presented in that case, this language is not open to objection. It will be noted that the plaintiff had recovered a judgment, and the only question presented was the question of the amount of damages.

It would, as bearing upon the question of damages, be obviously immaterial whether the sales were made at lawful hours or at other times. The damages were to be measured by the effect upon the plaintiff's husband; but, as applied to the present case, we think it should be held that the court's instruction properly presented the law. The statute (section 5398, 2 Comp. Laws) is certainly sufficiently broad to justify the instruction. It reads as follows:

"Every wife, child, parent, guardian, husband or other person who shall be injured in person or property or means of support or otherwise by any intoxicated person, or by reason of the intoxication of any person, or by reason of the selling, giving or furnishing any spirituous, intoxicating, fermented or malt liquors to any person, shall have a right of action in his or her own name against any person or persons who shall by selling or giving any intoxicating or malt liquor have caused or contributed to the intoxication of such person or persons, or who have caused or contributed to such injury; and the principal and sureties to the bond hereinbefore mentioned shall be liable severally and jointly with the person or persons so

selling, giving or furnishing any spirituous, intoxicating or malt liquors as aforesaid. And in an action provided for in this section the plaintiff shall have a right to recover actual and exemplary damages."

If there is to be read into this section any qualification, we think that qualification is sufficiently favorable to the seller if the word "unlawful" be interpolated by construction. The statute seems designed to give a remedy to one injured by reason of the intoxication of any person or by reason of the selling, giving, or furnishing any spirituous, intoxicating, fermented, or malt liquors to any person. If we interpolate the word "unlawful," the statute would read "by reason of the *unlawful* selling," etc., and the plaintiff's case is still within the statute. In this case there can be no such thing as a lawful sale of liquor to be drunk as a beverage. If such sale be made, and plaintiff suffer damage by reason of it, she is within the terms of the statute.

This view of the law disposes of many of the contentions of defendants' counsel. Complaint is made of the argument of counsel in which he criticised somewhat harshly some of the witnesses who appeared for the defendants. While the language might perhaps have been better chosen, the record indicates that the witnesses left themselves open to a serious criticism by their testimony.

As to the numerous requests to charge which were omitted, and as to the charges of the court on his own motion, we think it sufficient to say that in our judgment the circuit judge presented the issues to the jury fairly, and that the result reached was amply justified by the testimony in the case, and that no error to the prejudice of the defendants was committed.

The judgment will be affirmed.

BLAIR, C. J., and GRANT, OSTRANDER, and BROOKE, JJ., concurred.