MERRINANE v. MILLER.

1. INTOXICATING LIQUORS — CIVIL DAMAGE LAW — ACTION — EVI-
DENCE—PURPOSE—ILLEGALITY OF SALES.

In an action against a saloon keeper and his bondsmen for in-
juries to a wife from sales of liquor to her husband, the fact
that sales were made during prohibited hours and on prohib-
ited days, can be considered by the jury only as determining
the manner in which defendant was dealing with plaintiff's
husband, and whether there was any wantonness or reckless-
ness in such dealings.

2. SAME—RECOVERY OF MONEY SPENT BY HUSBAND.

Where there is no specific claim in the declaration for money
spent by plaintiff's husband for liquor, and no evidence from
which its amount can be determined, an instruction that
plaintiff is not seeking to recover therefor is not erroneous.

3. DAMAGES—MORTALITY TABLES—CONCLUSIVENESS—INSTRUCTIONS
—PROPRIETY.

An instruction that the mortality tables are not conclusive on
the question of the continuance of life, but are given to the
jury merely as aids, correctly states the general rule, and if
counsel claims that the facts of the case take it out of the
general rule, he should bring such claim to the attention of
the trial court.

4. INTOXICATING LIQUORS—CIVIL DAMAGE LAW—EXEMPLARY DAM-
AGES—INADEQUATE RECOVERY.

In an action against a saloon keeper and his bondsmen for in-
juries to a wife from sales of liquor to her husband, evidence
examined, and *held*, that the undisputed evidence showed
plaintiff entitled to a peremptory instruction for exemplary
damages, and that a verdict for $600 was so clearly insuffi-
cient as to entitle her to a new trial.

Error to Jackson; Parkinson, J.   Submitted April 9,
1907.   (Docket No. 41.)   Decided May 18, 1907.

Case by Nettie Merrinane against James Fred Miller,
a saloon keeper, and his bondsmen, under the civil dam-

age act. There was judgment for plaintiff for an insufficient amount, and she brings error. Reversed.

*R. S. Woodliff*, for appellant.

*Elmer Kirkby*, for appellees.

BLAIR, J. Plaintiff, the wife of John Merrinane, brought this action, in accordance with the provisions of the civil damage act, to recover damages of defendant, a saloon keeper, and his different bondsmen for three successive years, occasioned by sales of liquor to her husband. Plaintiff and her husband, then recently married, moved to Grass Lake, in Jackson county, where defendant was conducting his business, in November, 1902. They were married in June, 1901, and lived at Chelsea till their removal to Grass Lake. Plaintiff's husband was a telegrapher in the employ of the Michigan Central Railroad Company, earning $50 per month, and at the time he went to Grass Lake was a sober, industrious man of excellent habits, and had $500 of his earnings in bank. In the spring, after going to Grass Lake, he began to drink moderately at defendant's saloon, of which plaintiff's brother was bartender, and prior to December, 1903, occasionally got intoxicated. On December 22d he was notified of his discharge, as follows:

"*Dear Sir:* I enclose you time ticket for $27.44 covering 17 days' service in December, and beg to advise you that by direction of Mr. D. S. Sutherland, Div. Supt., your services are dispensed with, having proven unsatisfactory.

"Yours truly,
"E. H. MILLINGHOK, Supt. Tel."

After his discharge he drank heavily and soon became a common drunkard. They paid $7 per month house rent and from $25 to $30 per month for the support of the family out of the money in the bank until March, 1905, when the money was all gone, and plaintiff has since that time supported herself without assistance from her

husband.  Merrinane was night operator, his hours of duty being from 7 p. m. to 7 a. m.  Plaintiff testified:

"I knew he slept while he was on duty.  He always had a student that knew the call, and they would call him when they needed him.  He was a fellow that couldn't sleep daytimes very much.  He would try.  I would often see him go to bed five or six times in one day, but he never could get used to sleeping daytimes, and he always had a student, and it didn't make much difference because they could arouse him when they needed him. * * *

"Did not ask Miller not to sell her husband.  Witness never personally forbid Miller, from selling her husband liquor.  Did once through her brother, that was in March, 1905.  Up to March, 1905, witness never forbid either the bartender or Miller either verbally or in writing not to sell her husband liquor; heard her husband call for a drink.  She made no objection; said nothing to Miller at that time, although she had the opportunity."

Defendant was the only witness in his behalf and testified, in substance, as follows:

"He patronized my business more or less during the spring of 1903.  To my knowledge I never saw him intoxicated during that time.  I never sold him when he was intoxicated; don't know whether my bartender sold him or not. * * *

"When a man is intoxicated, in my judgment, he would be so he couldn't help himself.  To be intoxicated would be unable to help himself, would lay in a stupor, and would not be able to go home.  A man who is able to go home, though he reels and takes up the whole sidewalk, I should not judge to be intoxicated."

Plaintiff's counsel presented no requests to charge. The jury returned a verdict in favor of plaintiff and against all of the defendants for the sum of $600.  Plaintiff made a motion for a new trial on the ground that the verdict was against the law and the evidence, and the damages awarded grossly inadequate.  The motion was denied, reasons therefor filed, exception taken, and error assigned thereon.  Plaintiff brings the record to this court for review upon writ of error.

In view of the verdict in plaintiff's favor against all of the defendants, the only assignments of error which require consideration are those based upon the denial of the motion for a new trial, and upon such rulings and instructions of the court as may have affected the amount of the damages. The seventh, eighth, and thirteenth assignments of error allege error in instructing the jury that the plaintiff could only complain of unlawful sales which were unlawful because made to an intoxicated person or one in the habit of getting intoxicated.

"I do not mean by unlawful sales, sales made after hours at night or before lawful hours begin in the morning. We are not undertaking to punish Mr. Miller because he kept open too late at night or opened up too early in the morning, or was open on Sunday or Christmas, or any other holiday. But you have a right to consider what sales he made and when he made them, if they were made to Mr. Merrinane, simply to enable you to understand in what way Mr. Miller was dealing with Mr. Merrinane; and, if he sold him liquors during the time he was a man in the habit of getting intoxicated or at times when he was intoxicated, he is liable, and it is sufficient whether he sold them out of hours or in hours. But, as I say, you may consider whether they were out of hours simply in connection with determining any wantonness, or recklessness or carelessness in the way he was dealing with Mr. Merrinane, and for no other purpose."

This question arose during the progress of the trial, and plaintiff's counsel stated his position as follows:

"If the sales the first year were legal at the time he was being made a drunkard, the bondsmen for that year are not liable. * * * If the sales are illegal and they tend to create the habit which makes him a drunkard, they are liable."

It was held by this court in *Peacock* v. *Oaks*, 85 Mich. 578, that there could be no recovery under the statute for injuries caused by the sale or furnishing of liquor to another, unless such sale or furnishing is in violation of law. Whether this broad statement of the law may not require

some qualification it is unnecessary to determine in this case. Plaintiff's counsel conceded that plaintiff could only complain of illegal sales, but contended that among such sales were included sales after hours or on Sundays, etc. We think the instruction properly limited the effect of such sales.

The ninth assignment of error complains of an instruction that plaintiff was not seeking to recover any part of the money that her husband spent for liquor. There is no specific claim for such an item of damages in the declaration, nor was any evidence given from which the jury could determine the amount of money spent for liquor by Merrinane.

The tenth assignment of error is as follows:

"The court erred in charging the jury, as follows: 'But, if the amount she would receive had only been diminished and she had not been entirely deprived of it, then you would consider the extent of the diminution, if any, of her support due to those causes.'"

It is contended that the testimony showed a complete and not a partial loss, and the instruction was therefore erroneous. The contention is not sustained by the record. There was only a partial loss during the first year at least.

The eleventh assignment of error is as follows:

"The court erred in charging the jury as follows: 'Now, the expectancy tables have been shown here in evidence. Her age is 29 and his age 33. Her expectancy is $36\frac{2}{10}$ years and his expectancy $33\frac{21}{100}$. These are simply given to you as aids, not as absolute proof that he would live 33 years, or that she would live 36 years.'"

The court correctly stated the general rule; and, if plaintiff's counsel claimed that the facts of this case took it out of the general rule, he should have brought such contention to the attention of the court. *Davis* v. *Railroad Co.*, 147 Mich. 479.

The serious question in the case is presented by the assignment of error upon the denial of the motion for a

new trial. Are the damages so clearly inadequate, as
claimed by plaintiff's counsel, that the trial judge ought
to have awarded a new trial? The facts establishing
plaintiff's cause of action, as presented by this record, are
practically undisputed, and plaintiff would have been en-
titled, upon request therefor, to an instruction that she
was entitled to a verdict, and the only question for the
jury was as to the amount of the damages she had suffered.
The undisputed facts presented by this record show that,
when plaintiff and her husband moved to Grass Lake, he
was a temperate, industrious man, of good standing in
his vocation, earning $50 a month and contributing to his
wife's support from $25 to $30 per month. A few months
after coming to Grass Lake, he began drinking at de-
fendant's saloon, and from that time on he gradually be-
came intemperate until his discharge in December, 1903.
"At the time of his discharge, he was there nearly all the
time." After his discharge his descent was rapid until
he became a common drunkard, and was no longer
capable of furnishing any support to plaintiff. The de-
fendant Miller and his employés began and completed
Merrinane's ruin. So far as this record discloses, they
had no helpers. As often as he requested, after legal
hours, on Sundays, or legal holidays, regardless of the
law and his wife, so long as he was able to stand before
the bar, they dealt out the liquor to him, and only de-
sisted when "he lay in a stupor, and would not be able
to go home."

"Miller sold him liquor while in that condition any
time he wanted it if he could only stand up and drink.
* * * Witness [the bartender] told Miller if he kept
selling Merrinane liquor it would make him trouble.
Miller said he would not sell it to him, but the next day
he would get it just the same. Miller said it was a good
thing for witness' sister to get a divorce from Merrinane.
Miller said that it was the way his sister's husband
went. He either died or else she got a divorce. Miller
said he thought Merrinane was so far gone he would
never stop drinking."

None of these statements were denied by Miller, and so clear a right to exemplary damages is presented by this record that a peremptory instruction to that effect would have been justified. The case is unique, in that the facts which support the cause of action are undisputed, and no attempt is made to soften the harsh features of the case or mitigate the damages. On the contrary, we have the opinion of the principal defendant that the damage was complete; that "Merrinane was so far gone he would never stop drinking." Upon any reasonable theory of the facts disclosed by this record, we cannot regard the amount awarded plaintiff by the verdict of the jury as an adequate measure of her damages, and we think the trial judge erred in denying the motion for a new trial.

The judgment is reversed, and a new trial granted.

McALVAY, C. J., and CARPENTER, GRANT, and OSTRANDER, JJ., concurred.