### MERRINANE v. MILLER.

1. INTOXICATING LIQUORS—SURETIES ON LIQUOR BONDS.

   The sureties upon a liquor dealer's bond are liable to a wife, injured by the sale of intoxicating liquors to her husband, for all damages sustained from the entire result to which such sales contributed, although the wrongful sales extended over a period of three years which were covered by different bonds. 2 Comp. Laws, § 5398.

2. SAME—PRINCIPAL AND SURETY.

   Sureties are not usually presumed to have incurred any liability for acts preceding the execution of their obligation.

3. PLEADINGS—APPEAL AND ERROR.

   Defects in a declaration are not considered where there was no demurrer and the question was not properly raised at the trial.

4. EVIDENCE—EXPECTANCY—MORTALITY TABLES.

   In determining the amount of damages, the mortality tables are competent evidence.

157   279
s157   285
f157   313

5. DAMAGES—INTOXICATING LIQUORS—BONDS.
  Bondsmen of liquor dealers are not liable for damages in excess of the penalty of the bond which they execute.

6. JUDGMENTS—JOINT DEFENDANTS.
  A judgment against joint defendants for unlawful sales of intoxicating liquors cannot be entered as to principal and sureties in different amounts.

ON REHEARING.

JUDGMENTS—PRACTICE.
  On a rehearing it is held that the plaintiff is entitled to discontinue against the defendants whose bonds were less than the judgment, which is conditionally affirmed as to the principal and one surety who executed two bonds with a combined penalty in excess of the amount recovered.

Error to Jackson; Parkinson, J. Submitted June 3, 1908. (Docket No. 13.) Opinion filed November 2, 1908. Rehearing granted November 30, 1908; reargued February 10, 1909; former opinion modified July 6, 1909.

Case by Nettie Merrinane against James Fred Miller, a saloon keeper, and his bondsmen, under the civil-damage act. There was judgment for plaintiff, and defendants bring error. Affirmed conditionally.

*Elmer Kirkby*, for appellants.

*R. S. Woodliff*, for appellee.

MONTGOMERY, J. This action was brought under the civil-damage act to recover against the defendant Miller and three different sets of bondsmen for damages sustained in her means of support by the plaintiff by reason of unlawful sales of liquor to her husband, John Merrinane, during the three years beginning, respectively, May 1, 1903, May 1, 1904, and May 1, 1905. The case was before the court at a former term, and it was reversed mainly on the ground that the damages recovered were wholly inadequate. The case is reported in 148 Mich. 412 (111 N. W. 1050). On a retrial the plaintiff recovered a

verdict against all the defendants in the sum of $5,925, and the defendants have brought the case to this court for review.

The circuit judge charged the jury that:

" The undisputed testimony shows that Miller has violated this law and is liable in this case.  *  *  *  The evidence is undisputed that unlawful sales began during the time the first bond was in force, and extended into the second bond, and into, if not through, the period covered by the third bond; so that all the sureties who are made parties to this suit and are joined with Mr. Miller are equally liable."

And again the court charged:

" You don't have to separate out what occurred the first year, and put it on to Mr. Miller and his bondsmen for that year, and then Mr. Miller and his bondsmen for the second year, and Mr. Miller and his bondsmen for the third year, provided it was, as the evidence shows now, they began during the first year and ran right along through until it culminated in making this man what he was made finally by the unlawful sales of the third year."

These instructions present the principal question in the case.  The statute (2 Comp. Laws, § 5398) provides:

"Every wife  *  *  *  who shall be injured in person or property or means of support or otherwise  *  *  *  by reason of the intoxication of any person, or by reason of the selling, giving or furnishing any spirituous, intoxicating, fermented, or malt liquors, to any person, shall have a right of action in  *  *  *  her own name, against any person or persons who shall, by selling or giving any intoxicating or malt liquors, have caused or contributed to the intoxication of such person or persons, or who have caused or contributed to such injury, and the principal and sureties to the bond hereinbefore mentioned, shall be liable severally and jointly with the person or persons so selling, giving, or furnishing any spirituous, intoxicating, or malt liquors, as aforesaid, and in an action provided for in this section, the plaintiff shall have a right to recover actual and exemplary damages."

The theory of the plaintiff's case was that during the

period covered by the declaration her husband had there-
tofore been a sober man, capable of earning a comfortable
income for his family, but had been an habitual drunkard
and wholly incapacitated to maintain his family, and that
to this final result the various sales made during the three
separate years had, in turn, contributed. In such a case,
are the principal and the sureties on the bonds for each
of the successive years responsible for the final conse-
quences? It would be difficult to reconcile all the author-
ities in the different States which deal with statutes differ-
ing somewhat in terms from those employed in our State.
In Black on Intoxicating Liquors, § 299, it is said:

"If the plaintiff's cause of action is not founded upon
a specific act of injury resulting from a particular fit of
intoxication, but upon injury to her property or means of
support caused by the habitual drunkenness of her hus-
band, extending over a period of time, then all the deal-
ers who furnish him with liquor during such time, know-
ing his habit of intemperance, and whose sales contribute
to keep up such habit, are liable for the damages, though
there was no concert or connection between them."

In *Steele* v. *Thompson*, 42 Mich. 594 (4 N. W. 536), in
dealing with a statute similar in terms, the question was
whether the fact that the injury was helped on through
the acts of others in furnishing liquor called upon the court
and jury to make an apportionment of the liability among
the separate contributors to the injury. In dealing with
this question, Justice GRAVES said:

"The statute we are considering proceeds upon the idea
that there has been an injury which the defendant, by
some of the means indicated, has contributed to produce,
and that he shall be liable for the whole injury, and not
merely for such portion as a jury, if able to agree upon
any scale of apportionment, may assign as his actual
share or quota."

This case was followed in *Bowden* v. *Voorheis*, 135
Mich. 648 (98 N. W. 406), in which case plaintiff was
permitted to show frequent intoxications of her husband
without proving that they were occasioned by liquor sold

by the defendant. It was held that there was no error in receiving this testimony; the testimony showing that the plaintiff's husband had, during a long period, frequented this saloon and bought liquor there at least once a week. It was said:

" Plaintiff does not claim damages resulting from any particular intoxication of her husband. It is her claim that the sales of defendant contributed to her loss of means of support, shame, and disgrace. If they did— and whether they did or not was a question properly submitted to the jury—defendant was responsible for the whole injury, even though the sales made by others also contributed to produce it "—citing and approving *Steele* v. *Thompson, supra.*

An examination of the record in that case discloses that the period covered by the declaration was more than a single year. It happened that the bondsmen in the two separate years were identical. There may be a seeming conflict between *Bowden* v. *Voorheis*, and *Jewell* v. *Welch*, 117 Mich. 65 (75 N. W. 283 ). There is, however, this distinction: In *Jewell* v. *Welch* the offer of proof was to show that a sale was made to a minor son of the plaintiff, and the son became intoxicated in the saloon of the defendant. Such intoxication was distinct and separate from any intoxication induced by liquors received from Mr. Flegler or anyone else. The defense interposed was that a settlement of an action brought against Flegler and his bondsmen operated as a matter of law to release the defendant Welch from liability in his action. This contention was negatived. It is to be noticed that under another provision of section 5398, any person who sells liquor to any minor is made liable for both actual and exemplary damages therefor in a sum not less than $50 in each case, and while the opinion of the court in the *Jewell Case* does not refer to this provision of the law, it is perhaps distinguishable from the present case on that ground. In *Johnson* v. *Johnson*, 100 Mich. 326 ( 58 N. W. 1115 ), the court laid down the rule that, where the

plaintiff's husband commenced a protracted and continuous debauch on a given day by drinking in defendant's saloon, and his spree lasted for a considerable period the defendant is liable for all damages resulting therefrom. And in *Franklin* v. *Frey*, 106 Mich. 76 ( 63 N. W. 970 ), it was held that two several saloon keepers and the bondsmen of each may be joined in a single action for damages. While in *Johnson* v. *Johnson* the acts of the defendant were more clearly a cause of the continuing disability of the plaintiff's husband than in the present case, yet we think the principle in the present case is the same. In both, the sales made on the several occasions were unlawful. In both, these unlawful sales contributed to bringing about a final result; in the present case, the total disability of plaintiff's husband. While the result may seem harsh to the defendant, the statute is purposely made harsh. It was the clear intent to make it possible for the plaintiff to make proof against the parties who contributed to the downfall of one upon whom she was dependent, by means of unlawful sales of liquor. The consequences of such unlawful sales may be said to be far-reaching, but no more so than was requisite to adequately compensate the injured party.

It is said, and truly, that the general rule is that a surety is not to be presumed to have meant to become responsible for acts committed before he signed the obligation. But such is not the result of this reasoning. There could be no liability unless an unlawful act were committed after the signing of this obligation, and, in the light of this statute, which makes the principal and sureties liable for any contribution to the injury, the sureties must be held to have undertaken the obligation indicated by this opinion. See, also, *Wood* v. *Lentz*, 116 Mich. 275 (74 N. W. 462).

The alleged defects in the declaration we need not discuss at any length, as there was no demurrer, and the point was not properly raised on the trial.

The mortality tables were competent evidence. See

*Brockway* v. *Patterson*, 72 Mich. 122 (40 N. W. 192, 1 L. R. A. 708).

We think, however, error was committed in entering judgment for an amount in excess of $3,000. The defendant Corwin was a surety for the year 1903 in the sum of $3,000. The defendant Rank was a surety only during the year 1905, and his obligation was limited by his bond to $3,000. It is urged in the brief of plaintiff that the penalty of the bond does not limit the liability, but that the sureties on the bond are liable to any amount by virtue of their relation to the principal, and that the liability is not limited by the penalty of the bond. We cannot assent to this view. We think the statute fixing the liability of the sureties must be read in connection with the provision requiring a bond and fixing the penalty thereof. The proper judgment to have entered, therefore, would have been a judgment for $3,000 only. It was sought to remedy this error later by limiting the liability, against the two defendants who were joined, to $3,000, and by permitting the judgment to stand, as against the other defendants, at the amount found by the jury. This did not cure the defect. As was said in *Lafler* v. *Monroe Circuit Judge*, 118 Mich. 677 (77 N. W. 265):

"A satisfaction by one defendant would discharge the action. There is no provision of statute for severing in an action *ex delicto*, or for entering a judgment in one sum against one defendant, and in a greater sum against another."

The plaintiff elected to proceed to final judgment against all the defendants, and the judgment should be reversed and a new trial granted, unless the plaintiff shall elect to remit from her judgment all in excess of $3,000.

GRANT, C. J., and BLAIR, OSTRANDER, and HOOKER, JJ., concurred.

### ON REHEARING.

MONTGOMERY, J. This case was determined at the October term, 1908, and is reported *ante,* 279 (118 N. W.

11). A motion for a rehearing was granted upon the application of the plaintiff, it being contended that this court was in error in requiring a remittitur from the judgment down to $3,000 as against all the defendants, for the reason that it appeared that the plaintiff, on defendants' application for a new trial in the circuit court, consented that the court might grant a new trial to the defendants Corwin and Rank, who were limited in their undertaking to the amount of $3,000, and also that the plaintiff subsequently asked the circuit court to enter an order discontinuing the case as to Corwin and Rank, who had signed for only $3,000. Under these circumstances, it is claimed that the judgment should stand as against the principal and the surety Teufel, who was a surety on two bonds amounting in the aggregate to $6,000, a sum less than the amount of the verdict and judgment.

Our attention is directed to the case of *Moreland* v. *Durocher*, 121 Mich. 398 (80 N. W. 284), as bearing upon this question. It must be admitted that the importance of this case, as bearing upon the question under consideration, escaped the attention of the court at the former hearing. That case was an action against two liquor dealers and their bondsmen, and judgment was had against all the defendants in the sum of $1,200, and, upon a motion of one of the principals and his bondsmen, a motion for a new trial was granted, and the judgment allowed to stand as to the other principal and his bondsmen. In principle the case is not to be distinguished from the present. The finding of the jury in the present case is that all the defendants are liable for the amount of the verdict, and it is true in this case, as it was in that, that the plaintiff might have proceeded against the defendants as to whom she now claims that the judgment should stand, or might have discontinued as to the codefendants at any stage of the proceedings. In the language of the court, in that case:

" It is not easy to perceive, therefore, where the action

is thus severable as well as joint, and where the right exists to proceed against a portion or all of the defendants, why the plaintiff should be compelled to lose her judgment against a portion because it appears that the others are entitled to a new trial."

It is claimed that to permit a discontinuance as to a portion of the defendants would be inequitable, and the case of *Albright* v. *McTighe*, 49 Fed. 817, is cited as a case in point. In that case the court was exercising a discretion in refusing to grant a new trial. It differs from the present case in that respect. In the present case the question is as to whom the judgment as entered is erroneous, and as to them only is a new trial justified.

We are constrained to hold that we were in error in directing a reduction of the judgment.

The judgment will be reversed, unless the plaintiff shall elect to discontinue as to the defendants Corwin and Rank, and, if she shall so elect, the judgment will stand affirmed.

BLAIR, C. J., GRANT, OSTRANDER, HOOKER, MOORE, MCALVAY, and BROOKE, JJ., concurred.