THE CITY OF KEY WEST, *Plaintiff in Error,* v. CATHERINE BALDWIN, *Defendant in Error.*

## Opinion Filed February 9, 1915.

1. Where the Charter Act of a city provides that a City Council shall have power to regulate and provide by ordinance for the grading and construction of sidewalks, and the paving and repair thereof by the owner of property alongside and abutting on such sidewalks, and providing that in the event the property owner whose duty it is to construct or repair the sidewalk on which his property abuts, fails to comply with the ordinance, the city may cause the same to be constructed or repaired and the property owner shall be liable to the city for the cost of such work and the same shall be a lien on such property; also requiring the city to keep the streets and sidewalks free from obstructions and in good condition, such provisions do not relieve such city of its duty to exercise reasonable diligence in repairing defects in sidewalks, nor from liability for negligence in the discharge of such duty.

2. In an action arising *ex delicto* the plea of not guilty does not deny matters of inducement alleged in the declaration.

3. A plea which contains no matter that cannot be taken advantage of under the general issue should be treated as the general issue.

4. Contributory negligence is matter of defense.

5. In an action for personal injuries caused by a defective sidewalk, the evidence showed that the sidewalk where the plaintiff fell was four or five inches lower than the one on which she had been walking, that the depression was not gradual, but abrupt, that at night the lights shining upon the sidewalk made the whole surface appear to be smooth, and that the plaintiff stepped into this depression and fell, sustaining injury—*Held,* such facts *prima facie* show an actionable defect in the sidewalk.

6. Error in the admission of evidence which is harmless, is not ground for reversal.

7. Upon the question of the probable duration of the earning capacity of one permanently injured, the American Mortality Tables are admissible.

8. A party desiring a charge to be given upon a question of law should request such instruction as he may consider appropriate and desirable, else his complaint of the judge's failure to charge upon the desired point will not be heard.

9. Evidence examined and found sufficient to support the verdict on the question of damage.

Writ of Error to Circuit Court for Monroe County; M. F. Horne, Judge.

Judgment affirmed.

*E. M. Semple,* for Plaintiff in Error;

*W. Hunt Harris,* for Defendant in Error.

ELLIS, J.—Catherine Baldwin, the defendant in error hereinafter referred to as the plaintiff, brought an action at law in the Circuit Court for Monroe County against the City of Key West, the plaintiff in error, hereinafter referred to as the defendant.

The action is for damages for personal injuries alleged to have been sustained by the plaintiff while walking along Duval Street in the City of Key West in the night time.

The declaration alleges by way of inducement that the City of Key West at the time the alleged injury to the plaintiff occurred was a municipal corporation and exist-

ing under the laws of the State of Florida, and as such was clothed by the law of the State with powers and subject to the duty among others of keeping sound, safe and suitable for public use and travel all its public streets, alleys, walks and gutters, and particularly the street known as Duval Street in said city. That pursuant to the authority granted by law, the defendant in December, 1912, raised the grade of Duval Street, both the street proper and sidewalks upon each side thereof by placing curbing to an established grade and by paving the street proper with brick and by ordinance required the owners of adjacent property on each side of Duval Street to build and construct sidewalks of concrete in front of their respective properties on the new grade established for the sidewalks of said Duval Street as defined by the line of curbstone on each side of the street; that according to the statutes of the State of Florida and the ordinances in such cases made and provided, in those cases where the property holders failed or refused to build and construct a sidewalk of concrete in front of their respective properties on said street according to the new grade, the defendant was authorized and it became its duty to build and construct the sidewalk as aforesaid, and the cost of construction in law should become a lien upon said property so fronting on the street; that the owners of the property on the northeast side of Duval Street for a distance of approximately one hundred and sixty-one feet from the corner of Petronia and Duval Street built and constructed a sidewalk of concrete in accordance with the new grade for sidewalks as established by the defendant; that the heirs of Jas. R. Shackleford, deceased, the owners of the property fronting fifty feet on Duval Street next adjoining the one hundred and sixty-one feet above mentioned to the northwest, failed and refused to build and

construct a new sidewalk conforming to the new grade for sidewalks on said street as established, and that the sidewalk in front of the said property of the heirs of Jas. R. Shackleford was on the 5th day of December, 1913, approximately five inches below said established grade, and there was an abrupt break in the surface line of said sidewalk in front of said property, and that said sidewalk was approximately five inches below the established grade where it joined the one hundred and sixty-one feet already constructed according to the grade aforesaid, which fact was well known to the defendant, and had been known to the defendant for twelve months previous to December 5th, 1913, and that the defendant at different times during the said twelve months notified in writing the heirs of the said Jas. R. Shackleford to construct a new sidewalk in front of their said property on said Duval Street according to the new grade established as aforesaid; that the heirs of the said Jas. R. Shackleford notwithstanding said written notices and demands failed and refused to construct a new sidewalk in front of their said property on said street of Duval. The declaration then alleges that: "Said sidewalk on said December 5th, 1913, and for approximately twelve months before said date, was there wrongfully and negligently suffered to be and remain below the aforesaid grade, in bad and unsafe repair and condition, and divers holes and pitfalls then and there being on said street and sidewalk, uncovered and exposed in the nighttime and dark, to be fallen into without warning by the travellers on said street and sidewalk, all of which was known to the defendant on the 5th day of December, 1913, and had been so known to said defendant for approximately twelve months previous to said date.

Yet the said defendant, notwithstanding its duties as

aforesaid, did not keep its streets sound and safe and serviceable for public use and travel, but, on the contrary, knowingly, wilfully, negligently, wrongfully and unjustly permitted the sidewalk of the aforesaid street, known as Duval Street, at the point aforesaid, to be and continue, with the knowledge aforesaid of said defendant, in an unsafe, dangerous and defective condition as hereinbefore set forth, and for approximately twelve months next preceding the time of committing the grievance hereinafter mentioned.

And the said plaintiff, on the said 5th day of December, 1913, being at said time 64 years of age, while walking along said Duval Street, in a northeasterly direction, in the night time, at the point on said Duval Street, on the northeast side thereof, approximately 161 feet from the corner of said Duval Street and Petronia Street, as hereinbefore set forth, as she had a right to do, and not apprehending any danger, necessarily and unavoidably stepped off of said sidewalk that was constructed according to the said established grade, onto the said sidewalk in front of the said property of the heirs of Jas. R. Shackleford, deceased, and by reason of said last mentioned sidewalk being approximately five inches below the said established grade, which fact was not then known to plaintiff, said plaintiff necessarily and unavoidably tripped, stumbled and fell against and upon said sidewalk, street and ground with great force, and thereby, and as a result thereof, the left forearm of plaintiff was seriously wrenched, bruised, and sprained; her right arm was bruised and hurt, and her body otherwise bruised and wounded, and also by means of the premises, the said plaintiff became and was sick, sore, lame and disordered, and so continued for a long time, and will so continue to

the end of her life, during which said time, said plaintiff has suffered and will continue to suffer great pain and damage, and was hindered and prevented from performing and transacting her lawful affairs and work, and also by reason of the premises was obliged to pay and expend, and hath necessarily paid and expended divers sums of money for treatment, medicines and physicians services, in and about endeavoring to be healed and cured of the said wounds, hurts, sickness and disorders.

To the damage of the plaintiff, amounting to $2,000.00.

And therefore she brings this suit of trespass on the case."

On March 2, 1914, the defendant filed the following pleas: First, not guilty; second, the negligence of the plaintiff contributed to the damage and injury complained of; third, that the plaintiff's alleged damage and injury was not due to the negligence of the City of Key West or any officer, agent or servant thereof, but was entirely the result of an accident for which defendant was in no wise responsible, and, fourth, that the alleged damage and injury was caused by the negligence and improper conduct of the plaintiff and not otherwise. According to the jurat of the Notary Public, the pleas were sworn to by the Mayor of Key West, but it appears from the record that he did not sign the affidavit.

On the 10th day of June, 1914, at a term of the said court the cause was submitted to a jury on the issues joined between the parties.

The jury returned a verdict for the plaintiff and assessed her damages at two thousand dollars. Judgment was entered for the plaintiff on the verdict.

On the 11th day of June, 1914, and before the judgment was entered the defendant moved the court for a new trial on the following grounds: "First, that the verdict is contrary to the law, second, that the verdict is contrary to the evidence; third, that the verdict is contrary to the weight of the evidence; fourth, that the verdict is contrary to the law and the evidence; fifth, that the verdict is beyond the value of the damages proved by the evidence; sixth, that the verdict is excessive; seventh, that the verdict is contrary to the charges of the court." The motion was overruled and the defendant took writ of error.

There are five assignments of error. The first is based upon the order of the court denying the motion for a new trial.

It is contended that no duty devolved upon the City of Key West to build or construct sidewalks in the city, nor to repair or keep them in repair; that the city's authority extended only to requiring the owners of property abutting upon the streets to do so, and if the property owner failed or refused to comply with the requirements of the city ordinances relating to the construction of sidewalks the city was relieved of its duty to exercise due diligence in keeping the same in good condition.

We do not agree with this contention. This court held in the case of the City of Pensacola v. Jones, 58 Fla. 208, 50 South. Rep. 874, that under Section 1017 of the General Statutes requiring abutting owners to construct uniform and substantial sidewalks around their several lots, and to keep the same in repair did not relieve the city of its duty to exercise reasonable diligence in repair-

ing defects in sidewalks, or its liability for negligence in the discharge of this duty.

Section 26 of Chapter 5812, Laws of Florida 1907, entitled "An Act to Establish the Municipality of Key West, Provide for its Government and Prescribe its Jurisdiction and Powers," is as follows: "The City Council shall have power to regulate and provide by ordinance for the grading and construction of sidewalks and the paving of the same, and the repair thereof, by the owner or owners of the property alongside and abutting thereon, and if the owner or owners of any lot or lots, which shall be so required by ordinance to be constructed and paved aforesaid, shall fail to comply with the provisions of such ordinance within such time as may be prescribed therein and in accordance with the plans and specifications prescribed by such ordinance, the Board of Public Works may contract for the construction, grading, paving or repairs of such sidewalks as the case may be, and the city shall pay for the same, and the owner or owners of the property abutting where said sidewalk has been constructed, graded or repaired, shall be liable for the actual cost of such construction, grading, paving or repairs, as the case may be, and the same shall be a lien upon said lot or lots and said lien may be enforced in the Circuit Court of Monroe County;" and Section 32 provides: "It shall be the duty of the Board of Public Works to see that the streets and sidewalks are kept free from obstructions and that the same be kept in good condition." These two sections of the Charter Act of the City of Key West not only bring the city within the general rule as to keeping its sidewalks in good condition as announced in the Pensacola case, but impose upon it that duty in specific terms.

The allegations of the declaration that the City of Key

West about December, 1912, raised the grade of Duval Street, both the street proper and the sidewalks upon either side thereof, by placing curbing to an established grade and by paving the street proper with brick; and by ordinance required the owners of adjacent property on either side of Duval Street to build and construct sidewalks of concrete in front of their respective properties on the new grade established for the sidewalks as defined by the line of curbstone; and as to the construction of the sidewalk in accordance with this new grade on the northeast side of Duval Street for a distance of approximately one hundred and sixty-one feet from the corner of Petronia Street and Duval Street; and as to the failure and refusal of the heirs of Jas. R. Shackleford, deceased, the owners of the property fifty feet front on Duval Street, next adjoining the aforesaid one hundred and sixty-one feet to the northwest, to build and construct a new sidewalk conforming to the new grade; and as to the notice by the city through its duly constituted officers, to the owners of the said property to construct a new sidewalk in front of their said property at that point, are matters of inducement, which the plea of not guilty did not deny. Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318; Jacksonville Electric Co. v. Sloan, 52 Fla. 257, 42 South. Rep. 516.

The third and fourth pleas set up no matter which could not have been taken advantage of under the general issue, and should be treated as the general issue. Taylor v. Branham, 35 Fla. 297, 17 South. Rep. 552; Engelke & Feiner Milling Co. v. Grunthal, 46 Fla. 349, 35 South. Rep. 17.

The second plea is one of contributory negligence, which is a matter of defense. Hainlin v. Budge, 56 Fla. 342, 47

South. Rep. 825; Atlantic Coast Line R. Co. v. McCormick, 59 Fla. 121, 52 South. Rep. 712; City of Orlando v. Heard, 29 Fla. 581, 11 South. Rep. 182.

The evidence was sufficient to support the allegation in the declaration as to the negligence of the city in the matter of exercising reasonable diligence in repairing the Duval Street sidewalk at the point where the injury occurred. It was alleged in the declaration that the condition of the sidewalk, at the place the injury occurred, had existed for approximately twelve months prior to the date the injury was alleged to have occurred, and during all of that time the city knew of such condition and wrongfully and negligently suffered it to remain "below the grade aforesaid in bad and unsafe repair and condition." The evidence supported this allegation. It was shown that the Board of Public Works of the city knew that the sidewalk at the point in question was below the grade and that it was necessary to have it brought up to a level; that the Board had this knowledge in May, 1913, and that in that month the Board gave notice to the heirs of Shackelford to construct a sidewalk at that point to conform to the new grade; that a grade had been established by the city is shown by the allegations in the declaration admitted by the pleas. The notice served by the Board on the Shackelford heirs to construct a sidewalk in accordance with the specifications of the ordinance, which was also in evidence, announced the purpose of the Board to have the sidewalk constructed in accordance with the law and the costs would become a lien on the property, if the owners failed to comply with the notice within sixty days. The knowledge of the defects in the sidewalk, was by this evidence shown to have been in the possession of the municipal body. Yet for four months

after the expiration of the sixty days' limit given by the notice, the corporation failed to take any steps to repair the sidewalk or place it in the condition required by the ordinance. But it is urged in behalf of the city, as we read the brief of counsel, that the plaintiff should have made it to appear by allegation in the declaration and evidence to support it, that there was money in the hands of the treasurer of the city to meet the warrants to cover the expense of such work. If this defense was available it is one which should have been pleaded by the defendant and proven. Rule 72 of the Rules of the Circuit Court in Common Law Actions; Jacksonville Electric Co. v. Sloan, *Supra.* It was not pleaded, and therefore there was no issue on this point.

It is contended that the inequality in the sidewalk at the point where the injury occurred was not sufficient to make the city guilty of negligence in permitting it to remain. The evidence shows that the sidewalk on which the plaintiff fell was four or five inches lower than the one on which she had been walking, and from which she stepped when she fell; that she sustained an injury when she fell; that the depression was not gradual, but it was a sharp depression or angle about four or five inches below the sidewalk from which she stepped. The injury occurred in the night time, the lights from across the street shining upon the sidewalk on the opposite side "made the whole surface appear to be smooth." We think the evidence was sufficient *prima facie* to show an actionable defect in the sidewalk. Mayor and Alderman of Birmingham v. Starr, 112 Ala. 98, 20 South. Rep. 424; Bieber v. St. Paul, 87 Minn. 35, 91 N. W. Rep. 20.

The cases relied upon by the plaintiff in error are easily distinguishable from the case at bar, upon this point. In

Goodwin v. City of Shreveport, 134 La. 820, 64 South. Rep. 762, the sidewalk did not end abruptly, the depression was not more than 1 1-2 inches and sloped at an angle of 45 degrees toward the lower sidewalk; it was held that this was not such an inequality as to make the city guilty of negligence and liable to one injured by stumbling over it in the day time. In Shietart v. City of Detroit, 108 Mich. 309, 66 N. W. Rep. 221, Judge GRANT said the sole ground of negligence was the failure of the city to construct a sidewalk in front of the lot in a sparsely settled part of the city. The sidewalk was not out of repair, it had never been built. HOOKER, J., concurring, said the condition was perfectly safe to all except the heedless. While MONTGOMERY, J., dissenting, said that under the circumstances it was a question for the jury whether the constructed sidewalk was in a condition reasonably safe and fit for public travel. In the case of Kaweicka v. City of Superior, 136 Wis. 613, 118 N. W. Rep. 192, it appeared that the city rebuilt a portion of the sidewalk on a bridge by nailing planks two inches in thickness to the upper side of the walk as theretofore constructed and permitted the other portion of the walk to remain unchanged. This condition had existed nearly two months when the accident occurred. There was an abrupt drop of two inches going in one direction, and an ascent of two inches going in the other direction. The bridge was a half mile in length and the sidewalk thereon was level from one end to the other. The court held the defect too slight to justify a recovery, but said the "question is always one for a jury, unless the conditions and circumstances are so clear and convincing as to leave no room for reasonable controversy. When the conditions shown are such that different minds may draw different conclusions the jury

and not the court must make the ultimate determination."
That view may be very well applied to this case.

The second assignment is based upon an instruction by
the court to the jury as to the duty of the city under its
Charter in the matter of grading and constructing side-
walks. The charge was as follows: "Under Section 26,
Chapter 5812, the City Council of the City of Key West
has power to regulate and provide by Ordinance for the
grading and constructing of sidewalks and the paving
and repair of the same by the owners of the property
abutting thereon, and if the owner or owners of said
abutting lots, which shall be so required by Ordinance to
be constructed and paved as aforesaid, shall fail to comply
with the provisions of the Ordinance relating to grading
and construction of sidewalks within such time as may
be prescribed by said ordinance and in accordance with
the plans and specifications prescribed by such ordinance;
it is the duty of the Board of Public Works, acting for and
on behalf of the City of Key West, to contract for the con-
struction, grading, paving or repairing of such sidewalks
as the case may be, and the cost thereof becomes a lien
upon the abutting property." This charge was not ex-
cepted to at the time it was given, nor in the motion for
a new trial; we have considered it, however, and think
there was no error in it. The fact that the city has power
to regulate and provide by ordinance for the grading and
construction of sidewalks, and the repair thereof by the
owners of property alongside and abutting thereon, and
authorizing the city to contract for the construction, grad-
ing or repairing of such sidewalks in the event the owners
of the properly alongside and abutting thereon fail to
comply with the provisions of the ordinance requiring it
to be done, "does not relieve the city of its duty to exer-

cise reasonable diligence in repairing defects in sidewalks, or of its liability for negligence in the discharge of this duty." City of Pensacola v. Jones, *supra.*

A witness for the plaintiff named W. D. Cash, Jr., saw the plaintiff fall on the sidewalk when the injury is alleged to have occurred. He was asked certain questions, and replied as follows: Q. "Did you examine the sidewalk there Mr. Cash to see if there was anything there to cause the fall—Did you or did you not look? A. "I turned around and cussed the sidewalk." Q. "Why did you do it?" A. "Because it was such a piece of carelessness for a sidewalk of the main street to be in that condition." The defendant's counsel moved the court to strike the foregoing answer on the ground that "it was not a fact, but that the witness was stating his opinion." The motion was denied and this ruling is assigned as the third error. The assignment is not argued, but counsel for plaintiff in error insist that the court should have instructed the jury to give no weight to the answer of this witness. The opinion of the witness as to the carelessness involved in permitting such a condition to exist on a sidewalk of the main street, was not permissible under the rules of evidence, and the court should have directed the jury to disregard it, especially if a proper objection had been interposed to the question which elicited this objectionable reply. But the question here is: was the refusal of the court to grant this obviously correct motion of the defendant to strike the answer reversible error? The witness himself, after expressing the opinion, described the condition of the sidewalk. It is true that it was for the jury to determine whether the condition of the sidewalk at the point where the injury occurred was a reasonably safe condition for travel in the ordinary modes by night

as well as by day.    4 Dillon on Municipal Corporations, p. 2998; Brennan v. City of St. Louis, 92 Mo. 482, 2 S. W. Rep. 481; City of Americus v. Johnson, 2 Ga. App. 378, 58 S. E. Rep. 518; City of Anniston v. Ivey, 151 Ala. 392, 44 South. Rep. 48; Smith v. City of New York, 17 App. Div. (N. Y.) 438, 45 N. Y. Supp. 239.  The undisputed facts are that there was at the place where the injury occurred an abrupt break or inequality in the sidewalk of from three to five inches, about one hundred and sixty feet from the corner; that both the old and new sidewalks were of cement, and at night had the appearance of an unbroken or smooth surface.  An abrupt, perpendicular depression of as much as five inches occurring in a sidewalk some distance from a corner was such an inequality as the jury were warranted in finding was not reasonably safe for travel by night.  Independently of the witness' opinion as to carelessness, whether of the city or property owner he did not say, the jury had before it sufficient evidence from which to find that the city was guilty of negligence in permitting the defect to remain.  We think the error was harmless.

The fourth assignment is based on the ruling of the court sustaining the objection of the plaintiff's attorney to the question propounded by the defendant's attorney to the witness Harold Pinder, as to whether or not the Board of Public Works received in 1913 the amount required by law that they should be paid according to the budget. There was no error in this ruling.  There was no plea of the defendant presenting such an issue, and therefore the information sought by the question was irrelevant.

The witness Hoffman was asked by the plaintiff's counsel, regarding the American Mortality Tables, the following question: Q.  Can you tell from that book the life

expectancy of a woman 64 years of age?  To which question the defendant's counsel objected upon the ground "that mortality tables are not the proper way to introduce evidence regarding life expectancy of a person, and that the same is incompetent." This objection was overruled, to which ruling an exception was taken. The objection was properly overruled. The American Mortality tables have been made up from the combined experience of the life insurance companies of America, and have been recognized by many courts as the standard throughout the United States and are perhaps the best means known to the ascertainment of the probable duration of life. These tables show the probable duration of the life of a healthy person, but not the probable duration of one's earning capacity; but in order to estimate the probable duration of one's ability to earn money or to perform her own household duties and labors, it becomes necessary to ascertain the probable duration of her life, or as it is called, her life expectancy, and that taken into consideration with all the other evidence in the case, the jury is required to determine the probable duration of the earning capacity of the person enquired about. Illinois Cent. R. R. Co. v. Houchins, 121 Ky. 526, 89 S. W. Rep. 530, 1 L. R. A. (N. S.) 375; Mississippi & T. R. R. Co. v. Ayres, 16 Lea (Tenn.) 725; San Antonio & A. P. Ry. Co. v. Morgan, (Tex. Civ. App.) 46 S. W. Rep. 672; Merrinane v. Miller, 157 Mich. 279, 118 N. W. Rep. 11, 25 L. R. A. (N. S.) 585. The counsel for plaintiff in error complains in his brief of the failure of the court to instruct the jury fully in connection with the mortality tables, and as to how they should be used by the jury in determining the life expectancy of the injured person. The proper practice is to ask for the instructions which counsel may consider appropriate and desirable. Seaboard Air Line R. Co. v. Scar-

borough, 52 Fla. 425, 42 South. Rep. 706; Carr v. State, 45 Fla. 11, 34 South. Rep. 892.

On the question of damages it is urged that the amount fixed by the jury is "beyond the value of the damages proved by the evidence." We do not find that the amount allowed by the jury in this case, which was two thousand dollars, is excessive. The plaintiff was sixty-four years of age, a widow with five small grand-children dependent upon her. She did all of the household work, occasionally giving out the washing. After the injury she suffered greatly, her left arm and shoulder and left hip were bruised and wrenched. At the time of the trial six months afterwards, she could not raise her arm without great pain. As to her household work she could no longer perform it as she did before the injury. She has difficulty in doing the cooking for her family, and assists in a small way with the other work. The doctor treated her "off and on" for months. She did not recover. Dr. Maloney believes she could never recover. The muscles and nerves of her arm were injured, and there will always be a permanent impairment of the functions of her arm, said Dr. J. Y. Porter, Jr. Damages in cases like this must be measured by the loss of time during the cure, and expenses incurred in respect to it, the pain and suffering undergone by the person injured, and any permanent injury causing disability or further exertion in whole or in part, and consequent pecuniary loss. Wilson v. City of Wheeling, 19 W. Va. 323; Anderson v. City of Wilmington, 6 Pennewill's (Del.) 485, 70 Atl. Rep. 204.

The judgment of the court below is affirmed.

TAYOR, C. J., AND SHACKLEFORD, COCKRELL AND WHITFIELD, JJ., concur.